## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2018, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Tracey A. Hardy<br>Michigan City, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Ian McLean<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tracey A. Hardy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 29, 2018<br><br>Court of Appeals Case No.<br>20A03-1708-PC-1992<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Terry C. Shewmaker, Senior Judge<br><br>Trial Court Cause No.<br>20C01-1606-PC-30 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Tracey Hardy was convicted of two counts of dealing in cocaine within 1,000 feet of a public park, both Class A felonies, and one count of dealing in cocaine, a Class B felony. The trial court entered judgment of conviction and sentenced Hardy to forty-one years in the Indiana Department of Correction. On direct appeal, we affirmed Hardy's conviction and sentence. *Hardy v. State*, No. 20A03-1506-CR-538 (Ind. Ct. App. Nov. 30, 2015), *trans. denied.* Thereafter, Hardy, pro se, filed a petition for post-conviction relief alleging ineffective assistance of trial counsel which was denied by the post-conviction court. Hardy now appeals the denial of post-conviction relief, raising seven issues for our review which we consolidate and restate as whether the post-conviction court erred in denying Hardy's motion for post-conviction relief. Concluding the post-conviction court did not err, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Hardy's direct appeal:

> In 2012, the Elkhart County Interdiction and Covert Enforcement Unit (ICE Unit)—a joint drug task force comprised of various law enforcement agencies within Elkhart County, Indiana—began compensating a confidential informant, Cooperating Source 12009 (CS-12009), to provide information about individuals in Elkhart County whom the Source believed to be engaged in dealing drugs. Part of CS-12009's role as a confidential informant entailed participating in controlled drug

purchases under the direction and supervision of his ICE Unit handlers. At some point, CS-12009 informed the ICE Unit that Hardy was dealing cocaine.

On the afternoon of August 14, 2013, CS-12009 met with several ICE Unit officers, including Detective Andrew Whitmyer (Detective Whitmyer) and Detective Brian Schroth (Detective Schroth), for the purpose of arranging and carrying out a controlled drug purchase from Hardy. In the presence of the officers, CS-12009 placed a phone call to Hardy and set up the transaction. The officers searched CS-12009 to ensure that he was not in possession of any weapons, drugs, or large sums of money and equipped him with a concealed audio recording and transmitting device. The officers also provided CS-12009 with $80.00 in cash, which the officers had previously photocopied in order to keep track of the currency's serial numbers. Then, as the police maintained visual and audio surveillance, CS-12009 walked to a liquor store where he had agreed to meet with Hardy. A short time later, Hardy pulled up in a white Chevrolet Monte Carlo, and CS-12009 climbed into the passenger seat. The officers discretely [sic] followed the Monte Carlo as it traveled several blocks to a house located at 905 West Marion Street in Elkhart. There, CS-12009 waited as Hardy went inside the house, "got the drugs and brought them back out." Detective Schroth followed as Hardy drove CS-12009 back to the liquor store. Once Hardy pulled away, CS-12009 reconvened with the officers and was again subjected to a thorough search. In addition to returning $20.00 of the buy money to Detective Whitmyer, CS-12009 handed Detective Schroth three plastic baggies appearing to contain crack cocaine, the total weight of which was .72 grams. The substance in one of the baggies tested positive for .22 grams of cocaine.

On September 9, 2013, CS-12009 arranged a second controlled purchase involving Hardy. Once again, CS-12009 met with several ICE Unit officers, at which time he was searched,

outfitted with a recording and transmitting device, and provided with $40.00 in buy money that had previously been photocopied. This time, Detective Whitmyer, Detective Schroth, and two other ICE Unit officers monitored CS-12009 as he walked to 318 West Jefferson Street in Elkhart and went inside. A short time later, the officers observed as Hardy's white Monte Carlo pulled up to the house and Hardy went inside. A few minutes later, CS-12009 emerged and walked back to the officers' meeting location. After being searched, CS-12009 turned over two plastic baggies that appeared to contain crack cocaine and which had a total weight of .38 grams. The substance in one of the baggies tested positive for .17 grams of cocaine.

On September 11, 2013, CS-12009 arranged for a final controlled cocaine purchase from Hardy. As before, the ICE Unit officers thoroughly searched CS-12009, equipped him with a recording and transmitting device, and supplied $90.00 in photocopied cash to complete the purchase. With the officers watching, CS-12009 walked down the block to 318 West Jefferson—where the white Monte Carlo was already parked out front—and went inside for a few minutes. Upon his return to the ICE Unit meeting location, CS-12009 was searched, and he tendered four plastic baggies to the officers, which appeared to contain crack cocaine and weighed a total of .67 grams. The substance in one of the baggies tested positive for .13 grams of cocaine.

For several hours following the third controlled drug purchase, ICE Unit officers maintained surveillance of 318 West Jefferson Street and Hardy's Monte Carlo. At this point, Detective Whitmyer and Detective Schroth agreed that they had probable cause to arrest Hardy for dealing in cocaine, but they discussed the possibility that Hardy might be willing to provide information about his supplier or act as a confidential informant. When Hardy finally emerged and drove away from 318 West Jefferson, a uniformed patrol officer with the Elkhart Police Department initiated a traffic stop. Detective Whitmyer and Detective

Schroth—who had followed the patrol officer as he initiated the stop—removed Hardy from his vehicle, informed him that he was under arrest, placed him in handcuffs, conducted a cursory pat-down search for weapons, and transferred him to an unmarked police vehicle. Detective Whitmyer and Detective Schroth drove Hardy to a nearby park while other officers relocated Hardy's recognizable vehicle to a more inconspicuous location in order to avoid alerting any neighbors to the fact that Hardy was talking to the police.

Once at the park, the officers conducted a more thorough search of Hardy's person, seizing $975.00 from his pant pockets. The serial numbers on $55.00 of the recovered bills matched the photocopied money that CS-12009 had used to purchase cocaine earlier that day. Based on their conversation with Hardy, Detective Whitmyer and Detective Schroth decided to release Hardy rather than taking him to jail to be booked. Approximately one month later, on October 10, 2013, the State filed an Information, charging Hardy with Counts I and II, dealing in cocaine within 1,000 feet of a public park, Class A felonies, I.C. § 35-48-4-1(a)(1)(C),(b)(3)(B)(ii) (2013); and Count III, dealing in cocaine, a Class B felony, I.C. § 35-48-4-1(a)(1)(C) (2013).

On April 20-21, 2015, the trial court conducted a jury trial. Before any evidence was presented, Hardy moved to suppress the buy money that was seized from his pockets following the September 11, 2013 controlled drug purchase, arguing that the warrantless search was unlawful. After a hearing outside the jury's presence, the trial court denied Hardy's suppression motion. At the close of the evidence, the jury returned a guilty verdict on all Counts, and the trial court entered a judgment of conviction on the same. On May 14, 2015, the trial court held a sentencing hearing. The trial court imposed a sentence of forty-one years each on Counts I and II and a sentence of ten years on Count III—all to be served concurrently for an aggregate

sentence of forty-one years, fully executed in the Indiana Department of Correction (DOC).

*Id*. at *1-3 (footnotes and citations omitted).

[3] On June 6, 2016, Hardy filed a pro se petition for post-conviction relief and the post-conviction court granted Hardy's request to appoint a public defender. On August 18, 2016, the post-conviction court granted the public defender's motion to withdraw from the case. Hardy then amended his petition, twice, and the post-conviction court held an evidentiary hearing on May 4, 2017, before denying Hardy's motion with findings of fact and conclusions of law on August 21, 2017. In so doing, the post-conviction court found the following:

> 13. The allegations raised by [Hardy] in his Petition are that: the Elkhart Police Department did not have probable cause to arrest [Hardy] after three (3) drug sales; that the information the Elkhart Police Department provided in their affidavit in support of warrantless arrest was insufficient and/or misleading; and that [trial counsel] was ineffective for not raising those issues to the trial court. [Hardy's] overall claim is, simply, that there was no probable cause to support his arrest or the formal criminal charges that followed, and that [trial counsel] should have argued the same before the jury trial. [Hardy] additionally avers in his overall argument that [trial counsel] should have moved to suppress all of the evidence.

> 14. During the post-conviction relief hearing on May 4, 2017, [trial counsel], who is now the Chief Public Defender for Elkhart County, testified that he graduated from Ball State University with a Bachelor of Science in mathematics, then graduated from Valparaiso University School of Law

in 2000 with his law degree; that he has practiced criminal law for fifteen or sixteen years as both a deputy prosecuting attorney and a public defender; that he has focused on trial and appellate work; that he has conducted "dozens" of criminal jury trials; that he has both defended and prosecuted drug dealing cases; that he is familiar with "controlled buys" and how police utilize confidential informants; that he is familiar with the criminal discovery procedures in Elkhart County; and that he was provided with and reviewed discovery in this case. In addition, [trial counsel] acknowledged that he used his "skill, expertise, and knowledge" in defending [Hardy's] case to the jury and that he explored all appropriate defenses while representing [Hardy].

15. The Record in this case establishes that during the jury trial in this case, [trial counsel] orally moved to suppress evidence and statements related to [Hardy]. After arguments, the Court denied the oral motion to suppress. Upon review of the record, the Court notes that [trial counsel] argued that the "buy money" seized by [sic] [Hardy] when he was temporarily "arrested" on September 11, 2013, as well as statements that he made to the police, should have been suppressed because the Elkhart Police Department did not formally arrest the [Hardy] and take him to the county jail the same day. Instead, as argued by [trial counsel], the police only momentarily detained [Hardy] and then released him, only to re-arrest him on October 8, 2013.

16. Based upon the testimony of [trial counsel] at the May 4, 2017 post-conviction relief hearing, the transcript from the jury trial, and the arguments made by [trial counsel] during the trial and the motion to suppress, this Court finds that [trial counsel] did not provide ineffective assistance of counsel. Contrary to [Hardy's] allegations,

[trial counsel] did argue some of the issues raised by [Hardy]. The Court sat through and presided over the entire jury trial and witnessed [trial counsel] choose a jury of [Hardy's] peers, cross examine witnesses, argue objections, argue the motion to suppress, and argue the evidence in his closing argument. [Hardy] has not demonstrated that [trial counsel's] performance fell below an objective standard of reasonableness as determined by prevailing professional norms, or that the lack of reasonable representation prejudiced him, as is required by *Strickland* . . . . Additionally, [Hardy] has wholly failed to show that there is a reasonable probability that, but for [trial counsel's] unprofessional errors, the result of the proceeding would be different. Based upon the foregoing, there is no basis to conclude or find that [trial counsel] was ineffective in representing [Hardy].

17. During the post-conviction relief hearing on May 4, 2017, [Hardy] continually argued that there was no probable cause to support his arrest or the charges that followed. The Court, on more than one occasion during the hearing, referenced the memorandum decision from the Indiana Court of Appeals that affirmed [Hardy's] convictions and sentence. The Court of Appeals specifically found that there was probable cause to arrest and search [Hardy] after the Elkhart Police Department supervised and directed three (3) controlled buys of cocaine from [Hardy] *See, Hardy v. State*, No. 20A03-1506-CR-538, 2015 WL 7710249 (Ind. Ct. App. November 30, 2015) (unpublished memorandum decision).

18. In Indiana, if an issue is raised on appeal but decided adversely, it is *res judicata* and cannot be re-litigated. *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). This Court repeated the same during the post-conviction relief hearing and instructed [Hardy] that his arguments

concerning probable cause, or lack thereof, were *res judicata* and already decided by the Indiana Court of Appeals. This Court is bound by the principles of *res judicata* and cannot, as a matter of law, render any opinion regarding whether there was sufficient probable cause to arrest and/or charge [Hardy] because the Court of Appeals already determined that there *was* sufficient probable cause.

Appellant's Brief at 24-27. This appeal ensued.

# Discussion and Decision

## I. Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). These procedures create a narrow remedy for subsequent collateral challenges to convictions and these challenges must therefore be based on the grounds enumerated in post-conviction rules. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied.* And, as we often emphasize, "[p]ost-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Id.*

On appeal, a petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). We may not reweigh the evidence or reassess the credibility of the witnesses

and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). To prevail on a claim of post-conviction relief, the petitioner must show that the evidence is without conflict and leads "unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002).

[6] The post-conviction court made findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6). Therefore, we cannot affirm the judgment on any legal basis, but rather, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. We conduct this review under a clearly erroneous standard. *Id.*

[7] Where, as here, the judge who presided over the original trial is also the judge presiding on post-conviction relief, the court's findings and judgment are entitled to "greater than usual deference." *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied*. In such a case, the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's unprofessional conduct, there was a reasonable probability that a different verdict would have been reached. *Id.*

[8] Before proceeding to the merits of Hardy's appeal, however, we pause briefly to emphasize that pro se litigants without legal training are held to the same legal

standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). Pro se litigants must adhere to the rules of procedure and must be prepared to accept the consequences of their failure to do so, including waiver for failure to present cogent argument on appeal. *Id.* at 983-84. An appellate brief should be prepared in a manner so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented. *Pluard ex rel. Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999), *trans. denied*. We will not "search the record to find a basis for a party's argument" nor will this court "search the authorities cited by a party in order to find legal support for its position." *Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*. We must not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Basic*, 58 N.E.3d at 984.

[9] In the course of his twenty-page Appellant's Brief, Hardy raises numerous issues for our review, seven of which are formally framed as questions presented. Almost all of these issues, however, are "too poorly developed or expressed to be understood." *Id.* Therefore, we address only the issues we view to have adequate foundation and deem any and all remaining issues waived. *See id.*

# II. Ineffective Assistance of Trial Counsel

Although often unclear as to the *why* and the *how*, the thrust of Hardy's appeal is his contention that the post-conviction court erred in concluding his trial counsel was not ineffective. We disagree.

We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show: (1) his counsel's performance was deficient; and, (2) the lack of effective representation prejudiced him. *Id*. at 687. These prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Thus, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" as guaranteed by the Sixth Amendment of the United States Constitution. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). We recognize a strong presumption counsel rendered adequate legal assistance. *Id.* The petitioner must offer "strong and convincing evidence to overcome this presumption." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## A. Probable Cause Affidavit[1]

Hardy first claims that "the probable cause affidavit was defective because it contained false and misleading information and did not include any of the necessary elements of a controlled buy." Appellant's Brief at 7. Therefore, Hardy argues, his trial counsel was ineffective for failing to request a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

In *Franks*, the Supreme Court held that that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [the false statement was] necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held . . . ." *Id.* at 155-56. If an allegation of perjury or reckless disregard is

---

[1] To the extent Hardy appears to argue that probable cause did not exist for his arrest, such argument is res judicata. We concluded probable cause existed for Hardy's arrest on direct appeal. *Hardy,* No. 20A03-1506-CR-538 at *4. If an issue was raised on appeal, but decided adversely, it is res judicata. *Reed v. State,* 856 N.E.2d 1189, 1194 (Ind. 2006).

established by the defendant, and the rest of the affidavit is insufficient to establish probable cause, "the search warrant must be voided" and any evidence obtained from its fruits excluded. *Id*. at 156.

[16] Applied here, Hardy alleges that had trial counsel requested a *Franks* hearing, "all the fruits of the poisonous tree (the alleged buy money and drugs involved in all three alleged buy dates) should have been suppressed at trial." Appellant's Br. at 10. Even assuming Hardy could satisfy his burden of demonstrating that a false statement was included in the affidavit of probable cause, Hardy's reliance on *Franks* for the suppression of evidence misunderstands the law. The evidence in question was seized as the result of a search incident to arrest—not as the result of a search warrant. *Hardy,* No. 20A03-1506-CR-538 at *4. Thus, even if trial counsel had requested a *Franks* hearing, counsel would not have prevailed. "Counsel's performance is not deficient for failing to present a claim that would have been meritless." *Peak v. State*, 26 N.E.3d 1010, 1016 (Ind. Ct. App. 2015). Accordingly, Hardy fails to show clear error in the post-conviction court's finding.

## B. Adequate Investigation

[17] Next, Hardy alleges that trial counsel was ineffective for failing to conduct adequate investigation.

[18] Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, it is well settled that we should resist judging an attorney's

performance with the benefit of hindsight. *McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013). Our supreme court has cautioned:

> With the benefit of hindsight, a defendant can always point to some rock left unturned to argue counsel should have investigated further. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that it deprived the defendant of a fair trial.

*Ritchie v. State*, 875 N.E.2d 706, 719 (Ind. 2007). Thus, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *McKnight*, 1 N.E.3d at 201.

[19]     Here, Hardy alleges that trial counsel "was ineffective for failing to conduct a professional interview of Hardy and other residents of the 318 West Jefferson Street apartment complex. Had [trial counsel] acted professionally he would have learned that Hardy rented one of the apartments on the second floor." Appellant's Br. at 10. Hardy further claims the interviews would have revealed "crucial facts showing" that the confidential informant "did not know [Hardy's] last name or if [Hardy] was his actual real name at any time before his first arrest." *Id.* at 11. Not only does Hardy fail to provide a factual basis for these allegations in the record, he also fails to advance cogent argument regarding *why* trial counsel's performance was ineffective or *how* he was prejudiced by these failures. Therefore, Hardy failed to meet his burden and we must conclude trial counsel's investigation was not inadequate.

## C. Trial Arguments

[20] In his final argument which we find sufficiently developed to address on appeal, Hardy alleges trial counsel's performance was ineffective at the trial itself. Specifically, Hardy contends that trial counsel should have advanced arguments regarding the fact that the rear entrances of the buildings where the controlled buys occurred were not under surveillance, that officers did not actually witness an exchange of drugs, and that alternative sources of the drugs existed other than Hardy. These allegations are contradicted by the record, however, as trial counsel thoroughly cross-examined officers and repeatedly emphasized these facts in front of the jury. *See* Appellant Appendix Brief at 19-33. Moreover, trial counsel argued that the confidential informant was paid for his information and highlighted the informant's financial incentive to falsely accuse Hardy. *Id.* at 22. As such, Hardy has failed to show that the post-conviction court erred in rejecting his claims below.

# Conclusion

[21] The post-conviction court did not err in denying Hardy's petition for post-conviction relief. Accordingly, we affirm.

[22] Affirmed.

Najam, J., and Altice, J., concur.