

**FILED**

Aug 19 2016, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

<table>
<tr><td>

APPELLANTS PRO SE

Amir Basic
South Bend, Indiana

Gerard Arthus
Mishawaka, Indiana

</td><td>

ATTORNEY FOR APPELLEES

Robert J. Palmer
May • Oberfell • Lorber
Mishawaka, Indiana

</td></tr>
</table>

# I N  T H E
# COURT OF APPEALS OF INDIANA

<table>
<tr><td>

Amir Basic and Gerard Arthus,

*Appellants-Plaintiffs,*

v.

Numan A. Amouri, Mohamad H. Mohajeri, Mohammad Aslam Chaudhry, Adnan Khan, Imdad Zackariya, Mohammad Sirajuddin, Sarah Shaikh, Aijaz Shaikh, Ismail Al-Ani, Shaukat Chaudhry, Gulrukh Kareem, and Basman Salous et al.,

*Appellees-Defendants*

</td><td>

August 19, 2016

Court of Appeals Case No.
71A03-1510-PL-1820

Appeal from the St. Joseph Superior Court

The Honorable Steven L. Hostetler, Judge

Trial Court Cause No.
71D07-1505-PL-174

</td></tr>
</table>

**Crone, Judge.**

# Case Summary

[1] Amir Basic and Gerard Arthus (collectively "Appellants") appeal the dismissal of their claims against the Imam of the Islamic Society of Michiana, Inc. ("ISM"), as well as members of the boards of directors and trustees, Numan A. Amouri, Mohamad H. Mohajeri, Mohammad Aslam Chaudhry, Adnan Khan, Imdad Zackariya, Mohammad Sirajuddin, Sarah Shaikh, Aijaz Shaikh, Ismail Al-Ani, Shaukat Chaudhry, Gulrukh Kareem, and Basman Salous (collectively "Appellees"), stemming from Basic's removal from the ISM board of directors. As best we can discern, Appellants challenge the trial court's findings that it lacked subject matter jurisdiction and that Appellants lacked standing as well as its decision to quash certain subpoenas. Appellees request damages, including appellate attorney's fees, pursuant to Indiana Appellate Rule 66(E). Finding that Appellants have violated numerous provisions of Appellate Rule 46, including the failure to present cogent argument, we conclude that they have waived all issues for appeal. And finding that Appellants acted in procedural bad faith, we grant Appellees request for damages. Therefore, we affirm and remand for a determination of these damages.

# Facts and Procedural History

[2] In 2015, Basic was a member of the ISM board of directors ("Board"). On April 10, 2015, the other Board members and all members of the board of trustees ("Trustees") sent Basic a letter informing him that he was being temporarily suspended from the Board. The letter specified certain actions by

Basic that had led to his suspension: (1) unauthorized removal of certain official documents, refusal to return those documents on demand, use of the documents to coerce the Board to negotiate certain demands, and distribution of the documents to Arthus, who improperly posted them online; (2) frustration and impairment of ISM's goals and mission by disrupting Board meetings, using threatening and abusive language, intimidating Board members, illegally restricting access to the Masjid (meeting room) and community hall, thereby causing anxiety and hardship to ISM community members; (3) unauthorized modification of the office by removing a window; and (4) deliberate destruction of the toilet in the Masjid restroom. Appellants' App. at 52-53. The letter concluded that Basic's actions amounted to a "failure to adhere to the Islamic teachings and values of compassion and respect towards authority and community members … [and a] failure to adhere to [his] responsibilities and obligations as a Board Member to maintain harmony among the community." *Id*. at 52.

[3] At a subsequent meeting of the entire ISM membership community, ISM members voted via secret written ballot 121-2 in favor of permanently removing Basic from the Board, with Basic and Arthus being the only negative votes. This was followed by a hand vote, which was unanimous in favor of Basic's removal from the Board.

[4] ISM records show that Arthus was never an active, dues-paying member of ISM. Basic was not included in the treasurer's list of ISM members and

acknowledged that even though he had been in the ISM community since 1997, he was not officially a voting member of the community.

[5] In May 2015, Appellants filed a sixteen-count complaint against Appellees essentially claiming that Basic was wrongfully suspended from the Board and that Appellees had violated state and federal statutes governing nonprofit religious organizations. They sought a temporary restraining order vacating the suspension, reinstating Basic to the Board, and granting him access to certain official records of ISM. They also moved for a preliminary injunction, seeking to enjoin Appellees from interfering with Basic's duties as a Board member and from denying him access to certain ISM records. He asked the trial court to consider the grounds for his removal from the Board.

[6] The trial court denied the motion for temporary restraining order and granted Appellants leave to amend the complaint. In the amended complaint, Appellants asked the court to order Appellees to give them access to its membership lists, remove all members from the Board and Trustees, appoint a temporary trustee to manage ISM, and order formal elections. Appellants sought $5,200,000 in damages.

[7] In June 2015, the trial court issued an order denying Appellants' motion for preliminary injunction, which provided in part,

> ISM serves as an organization of Islamic believers in a several county area in Northern Indiana and Southern Michigan. [ISM President] Dr. Salous testified that it is a small organization where the worshippers know each other. The members meet

together quite frequently for education, prayer and meals. Dr. Salous testified that some of the members have become afraid of Mr. Basic. The board of directors has a responsibility to maintain cooperation and unity. To scrutinize the decision of the board and trustees, and later the entire congregation, that Mr. Basic was interfering with the spirit of unity and cooperation would require far too much intrusion into the "polity" of this religious organization.

Appellees' App. at 11. The trial court expressed its reservations as to whether it had subject matter jurisdiction over the case but did not dismiss it, as no motion had been filed at that time.

[8] Shortly thereafter, Appellees filed a motion to dismiss Arthus from the case based on lack of standing. A month later, Appellees filed a motion to dismiss for lack of subject matter jurisdiction. The trial court dismissed the action for lack of subject matter jurisdiction and alternatively determined that neither Arthus nor Basic had standing to pursue their claims.

[9] Appellants filed a motion to correct errors, which the trial court denied. Appellants now appeal.

# Discussion and Decision

## Section 1 – Appellants have waived all issues for consideration by failing to comply with the Indiana Rules of Appellate Procedure.

[10] Appellants challenge the trial court's dismissal for lack of subject matter jurisdiction and lack of standing as well as its decision to quash certain

subpoenas.[1]  At the outset, we note that Appellants have chosen to proceed pro se.  It is well settled that pro se litigants are held to the same legal standards as licensed attorneys.  *Twin Lakes Reg'l Sewer Dist. v. Teumer*, 992 N.E.2d 744, 747 (Ind. Ct. App. 2013).  This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so.  *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004).  These consequences include waiver for failure to present cogent argument on appeal.  *Id*.  While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules is so substantial as to impede our consideration of the issues, we may deem the alleged errors waived.  *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied* (2015), *cert. denied* (2015).  We will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood."  *Id*.

[11]  First, we note that it is difficult to discern Appellants' precise allegations because of the many deficiencies in their appendix and briefs.  Their appendix includes a forty-three-count, non-file-stamped complaint with no certificate of service.  Appellees have noted this deficiency and have included in their

---

[1] We note that Appellants have conflated the terms "standing" and "jurisdiction," repeatedly referencing the *court's* "standing."  It is jurisdiction, not standing, that pertains to "a *court's* power to decide a case or issue a decree."  BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).  In contrast, "standing" is defined as "[a] *party's* right to make a legal claim or seek judicial enforcement of a duty or right."  *Id*. (emphasis added).

appendix a file-stamped copy of a substantially different complaint, containing sixteen counts. Appellees' App. at 22. The trial court's reference in its order on preliminary injunction to a sixteen-count complaint supports the authenticity of the latter. *Id*. at 5. Thus, although Appellants' appendix includes a signed verification regarding the accuracy of all documents contained therein, the inclusion of the forty-three-count complaint appears to be a misrepresentation of the court's record.

[12] We also note that Appellants' brief is deficient in many respects. First, the statement of facts section includes argument and conclusions, in violation of Appellate Rule 46(A)(6), which limits the statement of facts to a narrative description of the relevant facts stated in accordance with the appropriate standard of review. *See New v. Pers. Representative of Estate of New*, 938 N.E.2d 758, 765 (Ind. Ct. App. 2010) (statement of facts section of appellant's brief shall neither omit relevant facts nor contain subjective argument), *trans. denied* (2011). Similarly, Appellants' statement of the case does not lay out the relevant procedural posture of the case as required by Appellate Rule 46(A)(5), but instead includes allegations and argument. Not only do both of these sections of Appellants' brief include improper content, but we also find them to be largely incoherent.

[13] Appellants' brief is also deficient with respect to the form of the appealed order. Appellate Rule 46(A)(12) requires an appellant to submit as an attachment to the appellant's brief a copy of the appealed order or judgment. Here, Appellants have submitted a copy of the appealed order, but it is no longer the

order as issued by the court. Rather, they have submitted a copy of the order that includes their own handwritten negative commentary throughout. Appellants' Br. at 58. In fact, the order is so heavily marked up with Appellants' scrawlings as to impede our review.

[14] Most importantly, Appellants' arguments are not cogent. Appellate Rule 46(A)(8) lists the requirements for the argument section of an appellant's brief, stating in pertinent part,

> (8) *Argument*. This section shall contain the appellant's contentions why the trial court or Administrative Agency committed reversible error.
>
> (a) The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.
>
> (b) The argument must include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues. In addition, the argument must include a brief statement of the procedural and substantive facts necessary for consideration of the issues presented on appeal, including a statement of how the issues relevant to the appeal were raised and resolved by any Administrative Agency or trial court.

[15] First, Appellants have failed to include the appropriate standard of review as required by Appellate Rule 46(A)(8)(b). Additionally, as the party with the burden of establishing error on appeal, Appellants must cite pertinent authority

and develop reasoned arguments supporting their own allegations. As for the smattering of cases cited within their argument section, Appellants fail to use them to develop coherent arguments *in support* of their own positions. Rather, they simply attempt to refute and distinguish cases relied on by the trial court in its order or advanced for consideration by Appellees, often in a pejorative and condescending manner.

[16] In this vein, we note that Appellants' brief is unnecessarily hostile in tone throughout and impugns the motives of opposing counsel, Appellees, and the trial court. "Petulant grousing" and "hyperbolic barbs" do not suffice as cogent argument as required by our appellate rules. *County Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind. Ct. App. 1999), *trans. denied* (2000). Moreover, "[a] brief cannot 'be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect, or profession[al] discourtesy of any nature for the court of review, trial judge, or opposing counsel.'" *Cochran v. Cochran*, 717 N.E.2d 892, 895 n.3 (Ind. Ct. App. 1999) (quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.,* 166 Ind. 466, 468, 77 N.E. 941, 942 (1906)), *trans. denied* (2000).

[17] The following are mere snapshots of the invective included in Appellants' brief: (1) Appellants accuse Appellees' counsel of "obfuscatory mouthing's [sic]," "Sophistic wrangling's [sic]," and being "well-versed in the art of obfuscation"; (2) Appellants accuse Appellees of being "intellectually" and "morally corrupt," engaging in "nefarious schemes," and running the organization "as if it were a 'third world' dictatorship"; and (3) Appellants accuse the trial court of

conducting a "courtroom farce" and "sham proceedings," characterize the trial court's findings as "snidely" stated and creating "straw-man or bogey-man argument," and impugn the court's legal knowledge by stating, "it is almost comical in that apparently the Court … has misunderstood the purpose of Subpoenas." Appellants' Br. at 20-21, 24, 27-28, 30. We admonish Appellants that "[i]nvectives are not argument, and have no place in legal discussion." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 301 n.3 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[18]   Simply put, in addition to submitting a defective appendix and a brief that is replete with defects, Appellants have failed to develop cogent argument to support any of their assertions of error. As such, they have waived review of these issues. *See Perry*, 25 N.E.3d at 105 n.1 ("As we may not become [Appellants'] advocate, we must conclude that [they] ha[ve] waived [their] argument[s] on appeal."). Therefore, we affirm the trial court's order.

## Section 2 – Appellees are entitled to damages, including appellate attorney's fees, based on Appellants' procedural bad faith.

[19]   Appellees request that we order Appellants to pay damages, including appellate attorney's fees, pursuant to Appellate Rule 66(E), which reads in pertinent part, "The Court may assess damages if an appeal … is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." Our discretion to impose damages is "limited, however, to instances when an appeal is permeated with

meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). "[T]he sanction is not imposed to punish mere lack of merit but something more egregious." *Troyer v. Troyer*, 987 N.E.2d 1130, 1148 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*. As such, we exercise caution in awarding appellate attorney's fees because of the "potentially chilling effect the award may have upon the exercise of the right to appeal." *Holland v. Steele*, 961 N.E.2d 516, 529 (Ind. Ct. App. 2012), *trans. denied*.

[20]    Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found.

*Thacker*, 797 N.E.2d at 346-47 (internal citations omitted).

[21]    The fact that Appellants chose to prosecute their appeal pro se does not relieve them of their duty to comply with all the rules of appellate procedure. *See Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52, 61 (Ind. Ct. App. 2002) ("Pro se litigants are liable for attorney's fees when they disregard

the rules of procedure in bad faith."), *trans. denied* (2003). When determining whether to impose appellate attorney's fees as a sanction for failure to follow those rules, "we can cut [Appellants] no slack simply because they have no formal legal training." *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990).

[22] In sum, Appellants were required to follow the rules of appellate procedure and failed to comply. Their appendix is defective, and their brief is practically devoid of discernible legal argument. Instead, the brief is laced with unseemly invective that permeates its entire fifty-eight pages. Their argumentative facts section and blistering handwritten remarks on the face of the appealed order reveal a flagrant disregard for the rules of appellate procedure. In other words, Appellants have demonstrated procedural bad faith. Based on the foregoing, we conclude that an award of damages, including appellate attorney's fees, is appropriate in this case and grant Appellees' request for such damages. *See Srivastava*, 779 N.E.2d at 61 (awarding attorney's fees based on pro se litigant's bad faith). Accordingly, we affirm and remand for a determination of Appellees' damages pursuant to Appellate Rule 66(E).

[23] Affirmed and remanded.

Kirsch, J., and May, J., concur.