## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2018, 6:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Claude F. Hudson
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Claude F. Hudson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 26, 2018 <br><br> Court of Appeals Case No. <br> 84A04-1708-CR-1871 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable Michael Rader, Judge <br><br> Trial Court Cause No. <br> 84D05-1701-F5-338 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Claude Hudson was convicted of battery on a public safety official resulting in bodily injury, a Level 5 felony, and found to be an habitual offender. He was sentenced to six years in the Department of Correction, enhanced by an additional six years for the habitual offender finding. Hudson now appeals, raising one issue that we will address: whether the evidence was sufficient to support his conviction for battery. Concluding the evidence was sufficient, we affirm.

# Facts and Procedural History

[2] On January 30, 2017, Elizabeth Smart was giving a lecture and conducting a meet and greet on the campus of Indiana State University in Terre Haute. Patrol Captain Ian Loomis with the Indiana State University Police Department was in charge of providing protection for Ms. Smart during her time on campus. Captain Loomis was dressed in a suit rather than a uniform at the request of Ms. Smart and University officials. His badge was displayed near his firearm at his waist.

[3] After Ms. Smart's speech in the Tilson Hall auditorium, Captain Loomis escorted her to the adjacent Heritage Lounge where she would meet guests. Jennifer Cook, an employee of the University and Ms. Smart's primary contact, stood next to Ms. Smart as people filed by in line to speak to her and have books signed. William Pappinchock, another employee of the University, was

also close by assisting guests. Captain Loomis' attention was drawn to Hudson, who was holding a folding knife at the refreshment table set up in the room. At least five times, Hudson looked at the knife, "flip[ped] it" toward Ms. Smart, then looked back at the knife. Transcript, Volume 2 at 246-47. Captain Loomis repositioned himself so he was closer to Hudson, hoping to draw his attention with a show of "low level . . . force" as if to subtly indicate, "[H]ey, I'm here. What your [sic] doing may be causing some alarm. What do you say we change what we're doing?" *Id.* at 247-48. Hudson stopped messing with the knife, looked at Captain Loomis, and acknowledged his presence by bobbing his head up and down for fifteen to twenty seconds. Hudson opened a tea packet with the knife and then put the knife in the right pocket of his coat. Hudson gathered his belongings and relocated to a couch approximately twelve to fifteen feet from where Ms. Smart was sitting.

[4] While sitting on the couch, Hudson had his hand in his right pocket and Captain Loomis could see he was fidgeting with the knife. After a few minutes, Hudson got up "pretty quickly and began moving toward Ms. Smart." *Id.* at 250. He did not take any of his belongings with him. His movements were "dedicated and determined. He got up and moved relatively fast" in Ms. Smart's direction, "with his eyes set on her." *Id.*, Supplemental Tr. at 6. Captain Loomis positioned himself between Ms. Smart and Hudson and placed his left hand up as he told Hudson to back up while displaying his badge and firearm. Hudson "ran into [Captain Loomis'] arm and delivered two (2) strikes to [his] left mid section." Supp. Tr. at 7. Captain Loomis swept Hudson's arm

away as he attempted a third strike. Captain Loomis described the pain from the strikes to his abdomen as a five to six on the pain scale.

[5] Both Cook and Pappinchock witnessed Captain Loomis' confrontation with Hudson. Cook saw Hudson approaching Ms. Smart, saw Captain Loomis put his arm out to stop Hudson, and saw Hudson run into Captain Loomis' arm and punch him twice in the stomach. Cook drew Pappinchock's attention and asked him to keep an eye out. Pappinchock then moved into a position closer to Ms. Smart and heard Captain Loomis tell Hudson to show his hands.

[6] In hopes of deescalating the situation instead of resorting to greater force, Captain Loomis again told Hudson to back up and indicated that they needed to move into another room. Although Hudson was angry and mumbling, he complied. In an adjacent room, Captain Loomis secured Hudson's knife and then patted him down, finding no additional weapons. Captain Loomis identified himself and stated he was a police officer, to which Hudson responded, "[Y]es, I know. I saw you watching me." Tr., Vol. 3 at 8. Captain Loomis was unable to immediately receive information from dispatch about Hudson due to technical difficulties, so he issued a no-trespass warning and had Hudson escorted off campus. After escorting Ms. Smart to her car at the conclusion of the event, Captain Loomis logged the knife into evidence and completed a probable cause affidavit. An arrest warrant was issued and served on Hudson the next day.

[7] Hudson was charged with battery resulting in bodily injury to a public safety official, a Level 5 felony, and was alleged to be an habitual offender. Hudson represented himself at his jury trial, accompanied by standby counsel. The jury found him guilty as charged, and in the second phase of the trial, found that he was an habitual offender. The trial court sentenced him to twelve years in the DOC. Hudson now appeals.

# Discussion and Decision

## I. Standard of Review

### A. Pro Se Litigants

[8] We begin by noting that Hudson is representing himself on appeal.[1] Pro se litigants without legal training are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). Pro se litigants must adhere to the rules of procedure and must be prepared to accept the consequences of their failure to do so, including waiver for failure to present cogent argument on appeal. *Id*. at 983-84. We "will not search the record to find a basis for a party's argument" nor will we "search the authorities cited by a party in order to find legal support for its position." *Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*. And we must not become

---

[1] Hudson was appointed appellate counsel for purposes of this appeal. Counsel filed a brief on Hudson's behalf, but Hudson thereafter requested that counsel withdraw and he be allowed to file his own brief. The court granted Hudson's request on March 19, 2018, and ordered Hudson to either file a new Appellant's Brief or file a Notice that he was accepting counsel's brief. Hudson filed his own brief on August 23, 2018.

an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Basic*, 58 N.E.3d at 984.

[9] Hudson's Appellant's Brief does not meet even the minimum standards of complying with our appellate rules. There is no statement of issues, statement of the case, or statement of the facts. *See* Ind. Appellate Rule 46(A). It is essentially twenty numbered paragraphs of argument with no references to the record or citations to case law or other authorities. Hudson does invoke several amendments to the United States Constitution but makes no effort to explain how they are relevant to his case. In short, most of Hudson's argument is "too poorly developed or expressed to be understood." *Id.* At its heart, though, Hudson's argument seems to be a challenge to the sufficiency of the evidence supporting his conviction, as he claims he did not strike Captain Loomis and did not know Captain Loomis was a public safety official. He also claims Captain Loomis, who testified at Hudson's trial, was not present at the book signing. We have endeavored to address Hudson's issues as best we can, but any and all issues not expressly addressed herein are waived accordingly. *Id.* at 983-84.

## B. Sufficiency of the Evidence

[10] In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the judgment and any reasonable inferences drawn therefrom, *id.*, and we will

affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

## II. Evidence of Battery

[11] Hudson was convicted of battery causing bodily injury to a public safety official. Ind. Code § 35-42-2-1(g)(5). To convict Hudson, the State was required to establish that Hudson "knowing or intentionally touch[ed] [Captain Loomis] in a rude, insolent, or angry manner . . . [and] the offense result[ed] in bodily injury to [Captain Loomis] while engaged in [his] official duties." Ind. Code § 35-42-2-1(c)(1), (g)(5)(A). For purposes of the offense, bodily injury is defined as "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.

[12] Hudson maintained that he did not touch anyone that night in the Heritage Room. Testimony from Captain Loomis and Cook show otherwise. Captain Loomis testified Hudson struck him twice in the midsection. Cook testified that she saw Hudson punch Captain Loomis twice in the stomach. The jury believed their testimony. To find otherwise on appeal would require reweighing the evidence for ourselves, which we will not do. *See Willis*, 27 N.E.3d at 1066.

[13] Hudson also claimed he did not know that Captain Loomis was a public safety official. It is the State's burden to prove by objective evidence that a citizen

who has encountered a law enforcement officer either knew or should have known that he was dealing with an officer. *Cupello v. State*, 27 N.E.3d 1122, 1128 (Ind. Ct. App. 2015). Under our highly deferential standard of review, we hold the State met that burden here. The evidence most favorable to the verdict demonstrates that Captain Loomis was situated near Ms. Smart to maintain peace and order, that he caught Hudson's eye when Hudson was showing his knife and Hudson thereafter acknowledged him, that Captain Loomis displayed his badge and firearm when he put his arm out to stop Hudson's approach, and that when Captain Loomis took Hudson out of the room and stated he was a police officer, Hudson replied, "[Yes], I know." Tr., Vol. 3 at 8. The evidence and reasonable inferences therefrom are sufficient to support the conclusion that if he did not affirmatively know, Hudson at least *should have known* Captain Loomis was a public safety official.

[14] Finally, Hudson asserts that Captain Loomis, who testified at Hudson's trial, was not the same man who Hudson encountered in the Heritage Lounge and who gave him a no trespass order. *See* Tr., Vol. 3 at 110 (Hudson testifying that the officer on January 30 "wasn't the same man that is here, I don't know what that's all about"); Brief of Appellant at 5 ("The fact is that the . . . officer who wrote a complaint about Hudson and released him with nothing but a trespassing warning . . . is not the officer who appeared in court."). Captain Loomis testified at Hudson's jury trial that he was present on January 30, 2017, and that Hudson had struck him. Cook and Pappinchock both testified that Captain Loomis was the officer providing security during the event. Captain

Loomis logged the knife into evidence, completed an incident report for the Indiana State University Police Department, and completed the probable cause affidavit from which an arrest warrant was secured. Hudson's claim that a different officer was involved in this incident is belied by the evidence most favorable to the verdict.

# Conclusion

There is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found Hudson guilty beyond a reasonable doubt. Hudson's conviction is affirmed.

Affirmed.

Riley, J., and Kirsch, J., concur.