

FILED

Feb 28 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Jesse L. Rose
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jesse L. Rose,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 28, 2019<br><br>Court of Appeals Case No.<br>09A04-1708-PC-1759<br><br>Appeal from the Cass Superior Court<br><br>The Honorable Rick Maughmer, Judge<br><br>Trial Court Cause No.<br>09D02-1404-PC-5 |

**May, Judge.**

[1]     Jesse L. Rose, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. He argues the post-conviction court did not hold a procedurally fair hearing and did not enter adequate findings of fact and conclusions of law. We affirm.

# Facts and Procedural History

[2] In 2012, Rose was convicted of four counts of Class A felony child molest.[1] We affirmed that conviction in a memorandum opinion. *See Rose v. State*, 09A05-1205-CR-251, 984 N.E.2d 256 (Ind. Ct. App. Feb. 15, 2013), *trans. denied.*

[3] On April 30, 2014, Rose filed a petition for post-conviction relief ("PCR"). In his petition, he alleged ineffective assistance of trial counsel, insufficient evidence to support his conviction, and inappropriate sentence. A public defender was appointed, but the public defender's office subsequently withdrew its appearance from the case. Rose requested and was granted a subpoena for trial court counsel Michael Boonstra. On July 11, 2017, the PCR court held a hearing on the petition, wherein Rose proceeded *pro se*.

[4] When asked to present his case, Rose asked if Boonstra would "be here?" (Tr. Vol. II at 8.) The PCR court assured Rose that Boonstra had been subpoenaed and had "better be here. But as a witness, not as your attorney." (*Id.*) It appears, from the transcript and the parties' briefs, Boonstra must not have been in the courtroom during this exchange but arrived later. Rose proceeded to present various documents as evidence and then testified for himself.

[5] When asked if he had additional witnesses, Rose responded, "I don't have no witnesses. I just got really questions from, from my attorney, ex-attorney

---

[1] Ind. Code § 35-42-4-3 (2007).

whatever." (*Id.* at 40.) However, when then asked, "Do you have other witnesses that you would like to call?[,]" (*id.*) Rose did not call Boonstra. The PCR court asked him again, "So, do you want to call anybody else?" (*Id.*) Rose responded, "Nope. I really don't have nobody else." (*Id.*)

The PCR court then allowed both Rose and the State to present closing arguments. As the PCR court was concluding the proceedings, the following exchange occurred:

> THE COURT: Okay. All right. All parties rest. The Court has the case. I will make a decision within 90 days --
>
> MR. ROSE: Hang on. Wait.
>
> THE COURT: -- I think is [sic] the time limit of [sic] today.
>
> MR. ROSE: I thought he, I thought he was going to be up here.
>
> THE COURT: Excuse me?
>
> MR. ROSE: I got questions that I wanted to question him.
>
> THE COURT: I asked you several times if you had witnesses.
>
> MR. ROSE: Yeah. Yeah. That's what I was meaning by him. I wanted, I wanted to question him.
>
> THE COURT: The evidence is closed, Jessie [sic]. I was very polite to you --

MR. ROSE: I didn't, I didn't, I didn't, I didn't under, see I got all my stuff right here. That's what I, that's what I was waiting on. That's why I said, well that's Boonstra. I didn't know (indiscernible). He's back there.

THE COURT: He's been here the whole time.

MR. LUPKE: Mr. Rose just indicated he knew Mr. Boonstra was here and that --

MR. ROSE: Right. I'm saying --

MR. LUPKE: -- he indicated he knew he was here.

\* \* \* \* \*

MR. ROSE: I needed to ask, I needed to ask all of my questions.

THE COURT: Jessie [sic], I gave you a chance to present --

MR. ROSE: I didn't know that's what you meant.

THE COURT: -- your evidence. I gave you a chance. I said several times do you have other witnesses to call.

MR. ROSE: Right, I didn't have no witnesses. I just wanted to ask my questions, that's why I tried to say when I say I got --

THE COURT: I told you that I subpoena, that you subpoenaed Mr. Boonstra through the Court. The Court issued a subpoena requiring him to be here today. He's been here.

MR. ROSE: Right.

(*Id*. at 48-9.)

[7] The PCR court issued an order denying Rose's petition. Therein, it stated the facts of the underlying conviction, the outcome of the direct appeal, and the grounds on which post-conviction relief were sought. It noted the subpoena that was sought and then sent to Boonstra. In relevant part, the PCR court found:

> 9. On 15 February 2017, Rose requested that the court issue a subpoena for Michael Boonstra[,] attorney at law and court appointed trial counsel for Rose[,] to attend the PCR evidentiary hearing. Thereafter, the Cass Clerk subpoenaed Michael Boonstra to attend the evidentiary hearing scheduled for 11 July 2017. Pursuant to the subpoena, Michael Boonstra was in attendance during the evidentiary hearing with Rose's apparent knowledge. The court informed Rose that Boonstra had been subpoenaed as requested, that Boonstra would be present, and Boonstra during the majority of the proceeding sat across from Rose and directly behind Prosecutor Lupke. In addition to Boonstra, the other person in the courtroom gallery was the jailer in charge of Rose during this hearing.

> 10. Rose did not call Michael Boonstra as a witness. After the evidence and final argument was concluded, Rose complained that he did not understand he could have called Boonstra to answer questions. The State objected to reopening the evidence.

(App. Vol. II at 18.) The PCR court's order also noted the evidence Rose did present, *i.e.*, several parts of different documents, such as pre-trial depositions, trial testimony, and police reports. The PCR court found: "None of the ten

exhibits offered by Rose included an appropriate foundation [but that this] court . . . has received the same to ascertain whether pro se Rose has presented any meritorious claims in spite of the accepted rules of civil procedure."[2] (*Id*. at 19.) The PCR court concluded Rose's documentary evidence was merely "a presentation to this court to second guess the juries [sic] determination of guilt by way of alleged meaningless inconsistencies occurring prior to or during the trial." (*Id*.) The PCR court also concluded Rose's "testimony concerning his sexual prowess, multiple conquests, and lack of fidelity to his wife would have done little to ingratiate Rose with the jury. Trial counsel's advice (not proven during this hearing) for Rose to not testify during the jury trial was more than appropriate and acceptable trial strategy." (*Id*.)

[8]     As to the other allegations of ineffective assistance, the PCR court found those allegations had been waived "first because they were available to Rose on appeal and not raised; and second because they were not pursued by Rose in this evidentiary hearing." (*Id*.) Other allegations of insufficient evidence and inappropriate sentencing were found to have been "adjudicated on appeal and res judicata to this proceeding." (*Id*.) As Rose had not

---

[2] The State objected, during the hearing, to the admission of any of this evidence. The PCR court told the State, "For purposes of this hearing, I'm going to admit it over your objection, Mr. Lupke. However, I'm reserving the right to rule on it after I consider the same in accordance with the objections that you've made [regarding foundation and hearsay]. I'm creating the record. I'm allowing these things to be put in the record so that I have a record." (Tr. Vol. II at 12.) While it did not cause issue herein, we note the better practice would be to make a ruling on the admissibility of evidence during the hearing so the parties have adequate notice as to what evidence the court will use to make its decision. *See* Ind. Evidence Rule 104(a) (The court must decide any preliminary question about whether . . . evidence is admissible.").

shown that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms [and had] not shown there is a reasonable probability that, but for counsel's (alleged, none proven) errors, the result of the jury trial would have been different[,] the petition for post-conviction relief [was] denied in all respects.

(*Id.*)

# Discussion and Decision

[9] We first note Rose proceeds *pro se.* It is well settled that *pro se* litigants are held to the same standards as licensed attorneys, and thus they are required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied.*

[10] Post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002), *reh'g denied, cert. denied sub nom. Davidson v. Indiana*, 537 U.S. 1122 (2003). As post-conviction proceedings are civil in nature, the petitioner must prove his grounds for relief by a preponderance of the evidence. *Id.* A party appealing a negative post-conviction judgment must establish the evidence is without conflict and, as a whole, unerringly points to a conclusion contrary to that reached by the post-conviction court. *Id.*

[11] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we

do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error--that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quoting *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*, 523 U.S. 1079 (1998)), *reh'g denied, cert. denied sub nom. Ben-Yisrayl v. Indiana*, 534 U.S. 830 (2001). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## Procedural Fairness of Hearing

[12] Rose argues "he was denied a procedurally fair setting." (Br. of Appellant at 13.) Rose claims the PCR court "prevented [him] from obtaining, through compulsory process, the evidence he needed to demonstrate his claim yet subsequently faulted him for failing to introduce this evidence." (*Id.* at 14.) Rose contends the PCR court "summarily disposed" of his petition. (*Id.* at 15.)

[13] A judge is given "latitude to run the courtroom and maintain discipline and control of the trial." *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997), *reh'g denied, cert. denied* 525 U.S. 1073 (1999). A court is given broad discretion with regard to decisions impacting the orderly procedure of the courtroom, and we review its decisions only for an abuse of that discretion. *Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007).

[14] After Rose presented his documentary evidence and testified himself, the PCR court inquired about any further evidence.

THE COURT: . . . Do you have additional evidence that you'd like to present? Additional testimony?

MR. ROSE: No, I already gave you the evidence that I was going to give you.

THE COURT: Okay. I got the evidence. Do you have additional witnesses to call?

MR. ROSE: I don't have no witnesses. I just got really questions from, from my attorney, ex-attorney whatever.

THE COURT: Do you have other witnesses that you would like to call?

MR. ROSE: I'm not able to get none, am I? I ain't, I ain't, I ain't got none.

THE COURT: You had made a request for the issuance of subpoena's [sic] to several people, well I think it was only, it was Jay Hirschauer --

MR. ROSE: Yeah.

THE COURT: -- and I denied that because it wasn't sufficient enough and you had me issue one subpoena --

MR. ROSE: Right. Yep.

THE COURT: -- for Mr. Boonstra?

MR. ROSE: Yes, sir. Yep.

THE COURT: So, do you want to call anybody else?

MR. ROSE: Nope. I really don't have nobody else.

(Tr. Vol. II at 39-40.)

The PCR court then proceeded to ask the State whether it had any evidence and it did not. At that point, the PCR court closed the evidence and both parties presented final argument. As the PCR court was informing the parties of the timeframe in which to expect a ruling, Rose intervened.

MR. ROSE: Hang on. Wait.

THE COURT: -- I think is [sic] the time limit of [sic] today.

MR. ROSE: I thought he, I thought he was going to be up here.

THE COURT: Excuse me?

MR. ROSE: I got questions that I wanted to question him.

THE COURT: I asked you several times if you had witnesses.

MR. ROSE: Yeah. Yeah. That's what I was meaning by him. I wanted, I wanted to question him.

THE COURT: The evidence is closed, Jessie [sic]. I was very polite to you --

MR. ROSE: I didn't, I didn't, I didn't, I didn't under, see I got all my stuff right here. That's what I, that's what I was waiting on.

That's why I said, well that's Boonstra. I didn't know (indiscernible). He's back there.

THE COURT: He's been here the whole time.

[THE STATE]: Mr. Rose just indicated he knew Mr. Boonstra was here and that –

(*Id*. at 48.)

[16] When the PCR court inquired as to why Rose did not call Boonstra as a witness, Rose responded he "thought [the PCR court] was talking about like witness, like somebody, that's why I say I ain't got no witness. Then I was saying I had Boonstra." (*Id*. at 50.) However, as evidence was closed,[3] the PCR court did not allow further testimony.

[17] Even without trial counsel's testimony, the PCR court addressed the evidence of ineffective assistance of counsel Rose presented at the PCR hearing. Rose testified, at length, regarding what he would have said if he had taken the stand during his trial. The PCR court concluded that testimony "would have done little to ingratiate Rose with the jury." (App. Vol. II at 19.) Rose also alleged, in his petition, other reasons why he did not have effective assistance of counsel at trial, such as counsel's failure to move for discharge "when trial court violated Ind. Criminal Procedure Rule 4(c)[,]" (*id*. at 29), counsel's failure to

---

[3] The State objected to the reopening of evidence.

move for mistrial "when Shawn Duckett violated Court's Separation of Witnesses order[,]" (*id.*), and counsel's failure to allow Rose to be present for "exparte [sic] communications with the jurors[,]" (*id.* at 30), *etc.* However, the PCR court determined those allegations were waived as they were either available during Rose's direct appeal and not raised or Rose failed to pursue them during the PCR hearing. Although Rose did not present testimony from his trial counsel, he testified on his own behalf and the PCR court took that testimony into account when it ruled on Rose's petition.

[18] We cannot agree with Rose that he was denied an evidentiary hearing or that the PCR court "failed to provide [him] with a procedurally fair hearing." (Br. of Appellant at 9.) He was allowed to subpoena Boonstra, Boonstra appeared for the hearing, and the PCR court asked Rose multiple times if he had witnesses to call, but Rose did not call Boonstra as a witness. The PCR court noted in its order that Boonstra was not only present for the hearing but also "sat across from Rose and directly behind [the State]." (App. Vol. II at 18.) As we hold *pro se* litigants to the same standards as licensed attorneys, *see Evans*, 809 N.E.2d at 344, Rose was required to know to call the witness he subpoenaed. As Rose proceeded *pro se*, he "must be prepared to accept the consequences[,]" *Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016), *reh'g denied*, of his inability to present his case in a more persuasive manner. *See, e.g., id.* at 985 (due to *pro se* appellants' defective brief, their arguments were deemed waived). Therefore, we cannot say the PCR court denied Rose a hearing or precluded him from presenting his witness.

# Sufficiency of PCR Court's Order

[19] Indiana Post-Conviction Rule 1, section 6 requires a court to make "specific findings of fact, and conclusion of law on all issues presented[.]" "[T]hese findings must communicate the basis upon which the petition is granted or denied," *Bean v. State*, 467 N.E.2d 671 (Ind. 1984), and must be "sufficient[ ] for review on appeal." *Lahrman v. State*, 501 N.E.2d 1109, 1114 (Ind. Ct. App. 1986).

[20] Rose argues "the post-conviction court failed to make specific findings of fact and conclusion [sic] of law." (Br. of Appellant at 16.) He contends the "court failed to cite one citation to support its conclusion [sic] of law." (*Id.*) Rose does not elucidate whether he means a citation to the record or citation to caselaw and statutes. Nevertheless, our review of the PCR court's findings of fact and conclusions of law, although not entitled as such, present an accurate description of the procedural posture of the case, the evidence presented, and the PCR court's reasons for concluding relief should not be granted.

[21] The PCR court sums up Rose's testimony as:

> Rose complains that trial counsel did not allow Rose to testify and present his side of the story related to accusations made against Rose. Rose complains all of the witness testimony was a vendetta against Rose because Rose had been sexually unfaithful on multiple occasions to his wife. Further, that the sleeping arraignments [sic] practiced by the family provided an explanation for Rose being caught unclothed and the victim unclothed from the waist down.

(App. Vol. II at 18.) The PCR court also noted "[n]one of the ten exhibits offered by Rose included an appropriate foundation[.] This court however has received the same to ascertain whether pro se Rose has presented any meritorious claims in spite of the accepted ruled [sic] of civil procedure." (*Id*. at 19.) The PCR court then concluded the documentary evidence was "a presentation to this court to second guess the juries [sic] determination of guilt by way of alleged meaningless inconsistencies occurring prior to or during the trial." (*Id*.) Additionally, it concluded Rose's testimony would not have endeared him to the jury; thus, Rose's trial counsel's strategy for Rose to not testify was not inappropriate. As to the other allegations, the PCR court concluded they were either waived due to not having been presented on direct appeal, waived due to not having been pursued at the evidentiary hearing, or barred by *res judicata* as they had already been pursued on direct appeal and ruled on. As such, the PCR court concluded Rose had not presented evidence his "trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms [or that] there [wa]s a reasonable probability that, but for counsel's (alleged, none proved) errors, the result of the jury trial would have been different." (*Id*.)

[22] These findings and conclusions are sufficient for our review and correctly reflect the contents of the record. At the hearing, Rose presented various parts of pre-trial depositions, transcripts, and police reports, without foundation. Rose then testified on his own behalf, at length, about what happened prior to his arrest for child molest. The majority of this testimony consisted of reasons being

given for why his wife would have been angry with him prior to going to the police with allegations of child molest. The foremost reason Rose listed for her anger was that he was not faithful to her. Rose stated he would have taken the stand and explained to the jury why his wife was mad, presumably in the hope that the jury would then believe he was not guilty of child molest.

[23] We cannot say the PCR court's conclusions regarding trial counsel's strategy together with its conclusions regarding the waiver of some allegations are wrong. As the PCR court provided sufficient findings of fact and conclusions of law, we cannot say its order is inadequate. *See, e.g., Lucas v. State*, 552 N.E.2d 35, 39 (Ind. 1990) (findings of fact and conclusions of law, even if not overly specific, need only be enough to enable the reviewing court to understand the decision and the process used in making that decision).

# Conclusion

[24] As the PCR court provided a procedurally fair hearing and the PCR court provided adequate findings of fact and conclusions of law, we affirm the PCR court's denial of Rose's petition for post-conviction relief.

[25] Affirmed.

Baker, J., and Robb, J., concur.