## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2019, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Steven Robbins
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Robbins,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

June 13, 2019

Court of Appeals Case No.
49A04-1709-PC-2143

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49G01-0205-PC-140250

**Baker, Judge.**

[1] Steven Robbins appeals the order denying his petition for post-conviction relief, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial counsel. We affirm.

## Facts

[2] The underlying facts as described by this Court in Robbins's direct appeal are as follows:

> On the night of May 12, 2002, Lateasa Purnell had a party at her home to celebrate her friend Latoya Crissler's birthday. Robbins and his wife, Nicole Robbins ("Nicole"), both attended the party. Also present at the party were Teresa Chandler, Minyunette Campbell, Rutland Melton, and Melton's friend Gracin Carpenter. During the course of the evening, Melton got into an altercation with a guest at the party and was asked to leave. Melton complied, and he and Carpenter left the party on foot.
>
> Shortly after Melton left, Campbell borrowed a car so that she could drive Carolyn Crissler home, and Nicole accompanied Campbell. In the meantime, Melton returned to the party to recover his cell phone and a necklace that he had left behind. While Melton was recovering his property, Campbell and Nicole returned and agreed to give Melton and Carpenter a ride home.
>
> As Melton and Carpenter began to sit down in the back seat of the vehicle, Robbins came up to the passenger side of the car where Nicole was seated and asked for the keys to their car. Nicole refused to give Robbins the keys and the two began to yell at each other. Robbins eventually began hitting Nicole and at some point she gave Robbins the keys to their vehicle. Seeing Robbins hit Nicole, Melton exited the car and told Robbins to stop. Robbins asked Melton "What?[]" and Melton repeated his statement. Robbins told Melton "I got something for you," and

ran back to his car and retrieved a gun. Robbins ran back to where Melton was standing by the car and said, "What now." Robbins then shot Melton in the chest. The bullet penetrated Melton's heart and liver causing his death. After this, Robbins fled the scene. Robbins was apprehended one month later and was charged with murder and carrying a handgun without a license as a Class C felony.

Robbins' jury trial began on August 30, 2004. At trial, Carpenter, Campbell and Chandler all testified that they saw Robbins shoot and kill Melton. Campbell testified that when Robbins said "What now," he was speaking to Melton. She also testified that she could see Robbins' face before he fired the gun and that Robbins was looking at Melton. Chandler testified that she could see what Robbins was aiming at and that he was aiming at Melton. The jury found Robbins guilty of murder and of carrying a handgun without a license as a Class C felony.

*Robbins v. State*, No. 49A04-0410-CR-455, slip op. p. 2-4 (Ind. Ct. App. Aug. 16, 2005). The trial court imposed an aggregate sixty-year sentence. Robbins appealed and this Court affirmed. *Id.* at 9.

[3] On March 10, 2006, Robbins filed a pro se petition for post-conviction relief. In October 2009, he filed an amended petition by counsel, arguing that he had received the ineffective assistance of trial counsel. The post-conviction court held an evidentiary hearing on Robbins's petition that spanned ten days between December 22, 2009, and July 25, 2017. On August 1, 2017, the post-conviction court issued an order denying Robbins's petition. Robbins now appeals.

## Discussion and Decision

[4] The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[5] From the outset, we note that we have endeavored to read Robbins's briefs and glean from them any cognizable legal arguments. The briefs are often difficult to parse and understand. We acknowledge that Robbins is representing himself in this appeal, but it is well established that pro se litigants are held to the same standards as those who are represented by counsel, and we will not fashion or

develop arguments on Robbins's behalf. [1] *E.g.*, *Basic v. Amouri*, 58 N.E.3d 980, 983-84 (Ind. Ct. App. 2016) (noting that this Court will not become an advocate for a party or address arguments that are inappropriate or too poorly developed or expressed to be understood).

[6] Robbins's primary argument is that he received the ineffective assistance of trial counsel. A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

---

[1] Robbins dedicates a majority of his briefs to arguments related to the sufficiency of the evidence supporting his convictions, the credibility of the witnesses who testified at his trial, and the weight of exculpatory versus inculpatory evidence. Such arguments are not available in post-conviction proceedings. *E.g.*, *Timberlake v. State*, 753 N.E.2d 591, 597-98 (Ind. 2001) (holding that free-standing claims of error and issues that were known and available on direct appeal are not available in post-conviction proceedings).

[7] At the outset, we note that Robbins's attorney[2] thoroughly prepared for trial. She met with him on a number of occasions, taking a large quantity of notes at each meeting. She reviewed all discovery provided by the State and conducted a considerable amount of discovery, including taking five depositions and other witness interviews. Counsel determined that the best theory of defense was that Robbins was in the driveway, brandishing his weapon and saying angry words, when he fell, resulting in the accidental discharge of his gun. Robbins was very involved with the preparation of his defense and agreed with this strategy. Counsel elicited testimony at trial from two witnesses who stated that Robbins had fallen on the driveway at the time of the shooting. She used this testimony and forensic evidence about the trajectory of the bullet to argue that the shooting was accidental. She introduced evidence and testimony and cross-examined the State's witnesses. She also asked for jury instructions on lesser-included offenses, resulting in the jury being instructed on reckless homicide as well as murder. It appears, therefore, that counsel provided zealous and effective representation.

[8] Nevertheless, Robbins argues that trial counsel was ineffective. First, he contends that trial counsel failed to investigate and interview two individuals: Charrece Houngevou[3] and Leroy Rogers. At trial, several witnesses testified

---

[2] Although Robbins had multiple attorneys representing him at trial, he focuses his argument on the lead attorney. We will do the same.

[3] There is some discrepancy in the record about this individual's last name. To avoid confusion, we will refer to her by her first name.

that before Robbins shot the victim, Robbins and his wife, Nicole, had been engaged in an altercation that turned physical. Robbins denies that he and Nicole got in a fight and insists that, instead, it was Charrece and her boyfriend who got into a domestic dispute. According to Robbins, the witnesses mistook Charrece and her boyfriend for Robbins and Nicole.[4] And indeed, at the post-conviction hearing, Charrece testified that she and her boyfriend did, indeed, get into a physical fight on the night of the shooting.

[9] Initially, we note that despite Robbins's conclusory statements to the contrary, there is no evidence in the record that counsel had any knowledge of Charrece's existence. In other words, Robbins never told counsel that she should interview Charrece, and Charrece's name did not appear in any documentation regarding the night in question, meaning that counsel was not deficient for failing to locate and interview her. Furthermore, Charrece testified at the post-conviction hearing that after she was seriously injured by her boyfriend, she left the party and did not see the shooting that occurred later. The fact that Charrece and her boyfriend got into a fight at one point during the party does not mean that Robbins and Nicole did not do the same later. Indeed, at least one witness testified that there was more than one altercation at the party. Therefore, this testimony would not have changed the result of the proceeding.

---

[4] Robbins does not deny that he shot the victim but argues that the circumstances of the shooting are relevant to his mens rea. He insists that if the jury had known that he was not in the midst of a domestic dispute when he shot the victim, he would have been more likely convicted of reckless homicide than of murder.

[10] Leroy Rogers is a childhood friend of Robbins. Rogers was also at the party on the night of the shooting. He testified at the post-conviction hearing that it was Charrece and her boyfriend who got into a fight that night. He also stated that Robbins's shooting of the victim was accidental, but did not explain why he reached that conclusion. We can only find that this conclusory testimony, coupled with Rogers's lifelong friendship with Robbins, when weighed against the trial testimony of the multiple independent witnesses who observed the shooting, would not have changed the result of the proceeding. In other words, Robbins has not established that he was prejudiced as a result of the omission of Charrece and Rogers as witnesses at his trial.

[11] Second, Robbins maintains that trial counsel should have called Nicole to testify at trial because she would have corroborated his version of events. Counsel testified at the post-conviction hearing that she interviewed Nicole during trial preparation. At that time, the relationship between Nicole and Robbins had deteriorated. Furthermore, the party where the shooting occurred involved Nicole's family. As a result, counsel made a strategic determination that Nicole would not be a good witness for Robbins. We decline to second-guess that determination. *E.g.*, *Curtis v. State*, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009) (noting that a decision regarding what witnesses to call is a matter of trial strategy that we will not second-guess).

[12] In sum, we find that the post-conviction court did not err by concluding that Robbins did not receive the ineffective assistance of trial counsel. Sprinkled throughout the remainder of Robbins's briefs are references to witness

tampering, prosecutorial misconduct, the subornation of perjury and eliciting knowingly perjured testimony from witnesses, the fabrication of evidence, and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). None of these arguments are cogent, supported by relevant legal authority, or developed in any meaningful way. Therefore, we decline to address them.

[13] The judgment of the post-conviction court is affirmed.

May, J., and Tavitas, J., concur.