**Larry RODTS, Appellant–Plaintiff,**

v.

**HEART CITY AUTOMOTIVE, INC., Appellee–Defendant.**

No. 20A04–1004–CT–249.

Court of Appeals of Indiana.

Sept. 7, 2010.

Sean M. Surrisi, Anderson, Agostino & Keller, P.C., South Bend, IN, Attorney for Appellant.

James P. Buchholz, Diana C. Bauer, Carson Boxberger LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Larry Rodts appeals the trial court's grant of summary judgment for Heart City Automotive, Inc. ("Heart City"). Rodts raises the following two issues for our review:

1. Whether his oral contract for employment with Heart City is unenforceable under Indiana's Statute of Frauds.

2. Whether a deferred compensation scheme constituted "wages" under Indiana law.

We hold that no genuine issues of material fact precluded the entry of summary judgment for Heart City. Rodts' oral contract is unenforceable and his deferred compensation was not a wage. As such, we affirm the trial court's entry of summary judgment for Heart City.

## FACTS AND PROCEDURAL HISTORY

In early 2004, a salesman at Heart City contacted Rodts and told him he should consider working for Heart City. Rodts had worked at Heart City previously and had only recently left his employment there. After receiving the communication from the salesman, in April or May Rodts met with Donna Lochmondy, president of Heart City, about returning to an employment position. Before long, their conversation turned to the terms of Rodts' employment.

According to Rodts' subsequent deposition testimony:

Q ... What else d[id] you discuss at ... that lunch?

A [by Rodts] Whether or not I'd come back to work, and then we started talking about pay.

Q All right. So did you indicate that you would come back to work?

A Yes.

Q Okay. And so you ... started discussing compensation?

A Yes.

Q And tell me what you recall associated with that.

A I told her I'd come back to work. I had to have two grand a week and I'd have a good bonus.

Q And what was her response?

A She said that she was sure I was worth it, but she didn't have that much money to pay me. She couldn't afford it at that time.

Q And what did you discuss associated with [the] bonus?

A Didn't. Decent bonus is seven, eight percent [of front-end net].

Q From your perspective, that's what a decent bonus is?

A  Yeah.  That's pretty much what most used car managers get.

Q  So as I understand it then, you were looking for [$104,000] base pay, plus seven to eight percent as a bonus?

A  Yes.

Q  And she said she couldn't afford it?

A  Yes.

Q  Okay.  So how did you leave the lunch then?

A  Well, I asked her what she could afford to pay me.  I mean[,] if we were within a couple hundred bucks, that's one thing.  She said a thousand dollars a week, plus bonus.

Q  All right.  So she told you what she could afford.  How did the discussion go from there?

A  Well, when she said a thousand dollars, I told her I couldn't do that.

Q  Okay.  All right.  So you left the meeting . . . ?

A  No.  We kept talking.

Q  Oh, okay.  So then tell me about that[.]

A  *I told her that I would go ahead and go to work at those numbers and I'd give her five years.*  Because that's all I wanted to work because that would put me at retirement age.  And I told her I'd get her place turned around and get it running for her and she could pay me the rest when I left.

\*   \*   \*

Q  I see.  And what do you claim her response to that was?

A  She agreed.  I said, "Let's get this going."  We shook hands.

Q  Now, so . . . I understand it, it was a thousand dollars a week plus a bonus plus some payment when you were done after five years?

A  The rest—*the difference between [one] thousand and [two thousand was] if I got the place turned around.*

Q  Okay. Did you write that down anywhere?

A  No.

Q  Are you aware of any written agreement relating to those terms?

A  No.

Q  Okay.  What is it that you expected "turned around" meant?  "Place turned around," what does that mean?

A  Making money again. . . .  Getting the store from red to black.

Q  Okay.  And you felt that the used car department was the only portion of that—was [100%] responsible for the turnaround?

A  Well, the used car department is an awfully big part of the profit center in a dealership.

Appellant's App. at 64–67 (emphases added).  Following that conversation, Rodts agreed to return to work at Heart City later in May of 2004.

On October 6, 2008, Rodts informed Lochmondy that he would be retiring and requested payment "of the $160,000 in deferred compensation that he was owed." *Id.* at 30.  Lochmondy responded that she did not think Rodts was owed any money.[1]  As such, in December of 2008 Rodts filed his complaint against Heart City alleging breach of contract and "wage payment claims."  *Id.* at 31 (capitalization removed).  On January 15, 2010, Heart City moved for summary judgment.  Relying on Rodts' own deposition testimony, the trial court granted Heart City's motion for summary

---

1.  The parties do not discuss whether Heart City went "from red to black" during Rodts' tenure.  *See* Appellant's App. at 67.

judgment on April 8 after a hearing. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Rodts appeals from the trial court's order on summary judgment. Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

*Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531–32 (Ind.Ct.App.2009). Where, as here, a trial court enters findings and conclusions in granting a motion for summary judgment, the entry of such findings and conclusions does not alter the nature of

our review but merely aids this court by providing a statement of reasons for the trial court's action. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996).

### Issue One: Breach of Contract

■ Rodts first argues that the trial court erred when it determined that his claim for breach of contract was barred by Indiana's Statute of Frauds. Under Indiana Code Section 32–21–1–1(b):

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
>      \*      \*      \*
>
> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

It is not disputed that Rodts' employment contract with Heart City was not in writing.

Rodts contends that his oral employment contract is enforceable for two reasons. First, Rodts contends that "his employment agreement with Heart City was for an indefinite term." Appellant's Br. at 10. Second, Rodts argues that his oral contract is enforceable because his "performance occurred each week he worked. That is, [he] performed on his end of the agreement within one (1) year...." Appellant's Br. at 8–9. It is unclear whether Rodts' second argument is that he may pursue his breach of contract claim for only the first year of his employment or if he is arguing that partial performance permits him to enforce the entirety of his

contract. We address Rodts' arguments in turn.

First, Rodts asserts that his oral contract was for an indefinite term and is therefore not precluded by the Statute of Frauds. In support, Rodts cites *Ohio Table Pad Co. v. Hogan,* 424 N.E.2d 144 (Ind.Ct.App.1981). In *Hogan,* we held:

> The contract was an indefinite one and, as such, was not rendered unenforceable by the statute of frauds. While the employee indicated a desire to work until she was "ready" to retire and indicated that she "expected" to retire at age sixty-two, under the evidence she was not committed to do either. Thus, considering only the evidence favorable to her position, the employment contract must be treated as one for an indefinite term.

*Id.* at 145. In light of that language, Rodts avers that the designated evidence here "does not show that the parties necessarily anticipated that the employment would last for a period longer than one (1) year." Appellant's Br. at 11. The goal of his re-employment, Rodts continues, was to work until retirement, not to work a fixed term.

Rodts' argument is defeated by his own deposition statements. There, Rodts unambiguously testified that the contract was a commitment to a specific term of employment: "I told [Lochmondy] that ... I'd give her five years." Appellant's App. at 66. Having testified that the term of his employment was to be five years, Rodts' subsequent argument that he intended to work indefinitely "until retirement" must fail. *See* Appellant's Br. at 12. That is, the only permissible inference from the designated evidence is that Rodts' oral contract was for a five-year term of employment. Thus, there is no genuine issue of material fact on the question of the term of Rodts' employment contract.

■ Next, Rodts suggests that the Statute of Frauds permits him to pursue his breach of contract claim because he "performed on his end of the agreement within one (1) year." *Id.* at 9. We cannot agree. The Statute of Frauds requires contracts that are "not to be performed within one (1) year from the[ir] making" to be in writing. I.C. § 32–21–1–1(b)(5). And "[p]erformance" under a contract is "[t]he successful completion of a contractual duty." Black's Law Dictionary 1158 (7th ed. 1999). Again, as his deposition testimony makes clear, Rodts and Heart City orally agreed to a five-year term of employment. As such, Rodts could not have "performed on his end of the agreement within one (1) year" because his agreement was for a five-year term. *See* Appellant's Br. at 9. Rodts could only have "performed," or "successfully complet[ed]," his contractual duty at the expiration of his five-year term. *See* Black's, *supra,* at 1158. Because the term of Rodts' employment was not to be performed in one year but, instead, five years, the Statute of Frauds applies to Rodts' action for breach of contract. *See* I.C. § 32–21–1–1(b)(5).

■■ Neither is Rodts permitted to except his action from the Statute of Frauds on the doctrine of partial performance. Generally speaking, "equity will not permit a party who breaches an oral contract to invoke the statute of frauds where the other party has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result." *Spring Hill Developers v. Arthur,* 879 N.E.2d 1095, 1104 (Ind.Ct.App.2008) (internal quotation and citation omitted). But Rodts did not allege

estoppel, unjust enrichment, or fraud[2] against Heart City in his complaint, and he has not developed any such arguments on appeal. Rodts has not advanced such claims, and we may not assume them. We will not become a party's advocate, and the failure to put forth a cogent argument acts as a waiver of the issue on appeal. Ind. Appellate Rule 46(A)(8)(a); *Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind.Ct.App. 2005), *trans. denied.* Accordingly, there is no genuine issue of material fact on the question of whether Rodts' claim for breach of the oral contract is barred by the Statute of Frauds. The trial court, therefore, did not err in granting summary judgment on that claim to Heart City.

### Issue Two: Wage Claims

Last, Rodts contends that his deferred compensation—the unpaid difference between Lochmondy's $1,000/week offer and Rodts' $2,000/week request—was a "wage" under Indiana law. As such, Rodts continues, Indiana Code Article 22-2 permits him to sue Heart City for those unpaid wages, plus damages. *See* I.C. § 22-2-5-2. Heart City responds that the deferred compensation was conditioned on Rodts helping to bring Heart City back to profitability and, therefore, that compensation was not a "wage" under Indiana law. We agree with Heart City.[3]

Rodts can succeed on his claim under Indiana's Wage Payment Statute, Indiana Code Section 22-2-5-1, only if the payments he seeks are "wages." *See Gress v.*

*Fabcon, Inc.,* 826 N.E.2d 1, 3 (Ind.Ct.App. 2005). Section 22-2-5-1(a) states that "[e]very person, firm, corporation, limited liability company, or association … shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Section 22-2-5-2 refers to the amount due the employee as the employee's "wages." And Section 22-2-9-1(b) defines "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount."

The name given to the method of compensation is not controlling to our determination of whether it is a wage. *Gurnik v. Lee,* 587 N.E.2d 706, 709 (Ind.Ct.App.1992). Rather, we will consider the substance of the compensation to determine whether it is subject to the Wage Payment Statute. *Id.* We have recognized that wages are "something akin to the wages paid on a regular periodic basis for regular work done by the employee." *Wank v. St. Francis College,* 740 N.E.2d 908, 912 (Ind.Ct.App.2000) (quotation and citation omitted), *trans. denied.*

Deferred payment of compensation that accrued during an employee's tenure is a wage. *Id.* However, if the compensation is linked to the financial success of the employer, it is not a wage. *See id.; see also Highhouse v. Midwest Orthopedic Inst., P.C.,* 807 N.E.2d 737, 740 (Ind. 2004) (holding that compensation "is a

---

**2.** In his first amended complaint, Rodts did allege fraud against Heart City. However, Rodts did not contest that Heart City was entitled to summary judgment on that count, and the court, in an order separate from its summary judgment order, ordered Rodts' fraud claim dismissed. Rodts does not challenge that ruling on appeal.

**3.** Neither the parties nor the trial court considered whether an action under Indiana Code Article 22-2 was permissible in light of Rodts' noncompliance with the Statute of Frauds. While not briefed by the parties, it appears that Rodts' characterization of his wage claim is nothing more than another way of phrasing his breach of contract claim. However, the parties do not raise that question, and we therefore do not address it.

wage 'if it is compensation for time worked and is not linked to a contingency such as the financial success of the company.' ") (quoting *Pyle v. Nat'l Wine & Spirits Corp.,* 637 N.E.2d 1298, 1300 (Ind.Ct.App. 1994)); *Jeurissen v. Amisub, Inc.,* 554 N.E.2d 12, 13 (Ind.Ct.App.1990) (concluding that an incentive plan linked to the financial success of the employer was not a wage), *trans. denied.*

Here, Rodts argues that his $1,000/week of deferred compensation "is a 'wage' under Indiana law as it was connected to the time worked by Mr. Rodts and its accrual was not contingent upon the financial success of the business." Appellant's Br. at 13. Cognizant of his deposition testimony, however, Rodts continues by claiming that that "discussion of the improvement of the businesses' [sic] finances was not a condition placed on receipt of the money." *Id.* We are not persuaded.

Again, Rodts' own testimony defeats his arguments. When asked to explain the payment he would receive when he "w[as] done after five years," Rodts responded that he would receive "the difference between [one] thousand and [two thousand] *if I got the place turned around.*" Appellant's App. at 67 (emphasis added). And when asked to clarify what "turned around" meant, Rodts stated "[g]etting the store from red to black." *Id.* The only conclusion that can be reached from the designated evidence is that Rodts' deferred compensation was conditioned on Heart City's profitability after Rodts' five years of service. As such, the deferred compensation is not a "wage" under Indiana law. Accordingly, the trial court properly granted Heart City's motion for summary judgment on Rodts' wage claim.

## Conclusion

In sum, we hold that there is no genuine issue of material fact on the question of whether Rodts' claim for breach of con-

tract is prohibited under the Statute of Frauds. We also hold that there is no genuine issue of material fact as to whether Rodts' deferred compensation is a "wage" under Indiana law. Hence, we affirm the trial court's summary judgment for Heart City.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.