

I N T H E

# Court of Appeals of Indiana

Barry F. Logan, Jr.,

*Appellant-Plaintiff,*

v.

Curtis Evans,

*Appellee-Defendant.*



FILED

Mar 04 2024, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 4, 2024

Court of Appeals Case No.
23A-SC-1324

Appeal from the
Marion County Small Claims Court

The Honorable
Steven G. Poore, Judge

Trial Court Cause No.
49K07-2112-SC-3629

**Najam, Senior Judge.**

## Statement of the Case

[1] Barry F. Logan, Jr. (Logan) appeals from the trial court's judgment for Curtis Evans (Evans) on Logan's small claim for breach of contract. Logan sued Evans for breach of a service and repair warranty on the heating and air conditioning (HVAC) equipment Evans had installed in Logan's residence. Evans counterclaimed. During a bench trial, Evans moved under Trial Rule 41(B) for an involuntary dismissal of Logan's claim based upon the statute of frauds. The trial court granted Evans' motion to dismiss and denied Evans' counterclaim. We affirm.

## Facts and Procedural History

[2] Logan contracted with Evans to install heating and air conditioning equipment in Logan's home. Evans installed that equipment between December 29, 2015, and March 31, 2016. The invoice embodied the complete agreement between the parties and included an invoice price of $22,875, which Logan paid in two installments. The invoice, dated December 29, 2015, described the HVAC equipment to be installed but made no reference to a warranty for service or repair. *See* Exhibits Vol. 3, p. 37 (Plaintiff's Ex. 24).

[3] Logan contends the first installment payment of $14,000 he made on the invoice included $10,000 for a warranty; however, there is no documentation to support that contention except Logan's own assertions in his affidavit. *See id.*, p. 4 (Plaintiff's Ex. 1, Affidavit of Barry F. Logan, Jr. 9-30-2022).

[4] In September and October 2021, Logan requested that Evans perform "warranty repair" on the first-floor furnace. Appellant's Br. p. 6. In December 2021, after Evans did not respond, Logan filed a small claim against Evans alleging that he had "paid Evans $22,875 to perform and warrant HVAC work" on his property and had "not been able to receive agreed upon products/services." Appellee's App. Vol. II, p. 17 (small claims complaint). Logan requested $10,000 in damages from Evans, the amount he attributed to purchase of the warranty. *Id.* Logan's claim was, in effect, a complaint for rescission of the alleged service and repair warranty.

[5] Evans filed a motion to dismiss which alleged that Logan was attempting to "repackage" claims that had been previously litigated as a fraud claim. *Id.* at 22. After a hearing, on June 6, 2022, the trial court granted Evans' motion to dismiss all claims "originating from fraud, breach of contract, and home improvement" and denied the motion to dismiss "for breach of [a] service and repair warranty." Appellant's App. Vol. II, p. 2.

[6] In November 2022, the trial court conducted a bench trial on the remaining claim. After Logan had completed the presentation of his evidence, Evans moved for an involuntary dismissal under Trial Rule 41(B) based upon the

statute of frauds, specifically, Indiana Code section 32-21-1-1(b)(5) (2002). Tr. Vol. 2, p. 73. The trial court took the motion under advisement and recessed the trial. Appellant's App. Vol. 2, p. 3.

[7] On November 28, 2022, the trial court entered its Order, which included written findings and conclusions. The court found that Logan's claim that Evans had "personally agreed to perform warranty service after one year had passed from the date of [HVAC] installation under an agreement not reduced to writing" would "if true" be barred under Indiana Code section 32-21-1-1(b)(5) because the alleged agreement "was not reduced to writing." *Id.* at 5. Thus, the court held that "upon the weight of the evidence and the law" Logan had failed to show that he was entitled to relief on his claim that Evans had breached an agreement to personally provide warranty and repair service to Logan for the HVAC systems Evans installed in Logan's residence. *Id.*

[8] The court granted Evans' motion for involuntary dismissal and dismissed Logan's claim.[1] Logan then filed a motion to correct error, which the trial court denied. Logan now appeals.

---

[1] The trial court entered judgment for Logan and against Evans on Evans' counterclaim for attorney's fees and costs, stating

> 24. The court having observed the manner and demeanor of [Logan] during his testimony and considered this against the facts presented finds that [Logan's] testimony about his intent at the time he filed the notice of claim for the above entitled cause was credible and more likely than not true.
> 25. The court finds that it was [Logan's] intent that the notice of claim assert a claim based upon breach of [a] service and repair warranty.
> 26. Although the court found that [Logan's] claim was barred by the statute of [frauds], the court finds that [Logan] made a good faith and rational argument on the merits of the action.

# Issue

The question presented is whether Logan's warranty claim is an action involving a contract that is not to be performed within one (1) year and, as such, is barred by the statute of frauds, Indiana Code section 32-21-1-1(b)(5).

# Discussion and Decision

## Standard of Review

Logan appeals from a negative judgment. "'A judgment entered against the party bearing the burden of proof is a negative judgment.'" *Ayers v. Stowers*, 200 N.E.3d 480, 483 (Ind. Ct. App. 2022) (quoting *RCM Phoenix Partners, LLC v. 2007 E. Meadows, LLP*, 118 N.E.2d 756, 760 (Ind. Ct. App. 2019)). "'On appeal from a negative judgment, this Court will reverse the trial court only if the judgment is contrary to law.'" *Id.* "'A judgment is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion.'" *Id.* "'In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the prevailing party, together with all reasonable inferences therefrom.'" *Id.*[2] We will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

---

Appellant's App. Vol. 2, p. 12. This judgment was not appealed.

[2] Logan asserts that "Evans' Brief has not demonstrated how the Small Claims Court correctly held that Logan's complaint was barred by the Statute of Frauds." Reply Br. p. 8. However, the burden on appeal begins and remains with Logan to demonstrate that the trial court erred. It is not Evans' burden to show that the trial court was correct.

[11] Here, the trial court entered written findings and conclusions. "In an appeal from a small claims judgment, a trial court's special findings aid our review by providing us with a statement of the trial court's reasoning, but they do not alter the nature of our review." *Id.* at 484. "Special findings and the two-tiered standard of review under Trial Rule 52(A) do not apply in small claims proceedings." *Id.* (citing *Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind. 1995)). Small claims trials are informal, "with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. . . ." Ind. Small Claims Rule 8(A). However, a litigant who appeals an adverse judgment on the merits has taken himself out of the informal context of a small claims court and is subject to the same standards on appeal as any other appellant. *Potts v. Castillo*, 460 N.E.2d 996, 998 (Ind. Ct. App. 1984). And while Logan proceeds *pro se* in this appeal, "'[i]t is well settled that *pro se* litigants are held to the same legal standards as licensed attorneys.'" *Spainhower v. Smart & Kessler, LLC*, 176 N.E.3d 258, 263 (Ind. Ct. App. 2021) (quoting *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016)), *trans. denied*.

[12] Logan also appeals from the denial of a motion to correct error. "We review the denial of a motion to correct error for an abuse of discretion." *Ayers*, 200 N.E.3d at 483-84. "An abuse of discretion occurs when the judgment is clearly against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.* at 484. "Thus, in this appeal both from a negative judgment and a motion to correct error, the only question presented is whether the trial court misinterpreted or misapplied the law to the facts." *Id.*

## Analysis

[13] Logan makes four arguments in support of his contention that the trial court erred. First, he contends categorically that the statute of frauds does not apply to the alleged transaction. Second, he contends that the statute of frauds does not apply to home improvement contracts. Third, he contends that the statute of frauds does not apply because the agreement is governed by Article 2 of the Uniform Commercial Code (U.C.C.). And fourth, he contends that, in any event, there is sufficient evidence of an oral warranty agreement between the parties.

## Waiver

[14] Evans counters that Logan has waived these arguments either because they were not presented to the trial court at all or were raised for the first time in Logan's motion to correct error. Whether or not Logan has waived one or more of these arguments, given that this appeal has been fully briefed, we elect to address each claim on its merits and shall consider each in turn.[3] *See Omni*

---

[3] Evans also contends that the Motions Panel of our Court erred when it granted Logan's motion to file a belated brief and appendix. Appellee's Br. p. 8. Evans filed a motion to dismiss in which he alleged that Logan was not entitled to an extension of time under the Rules of Appellate Procedure, which the motions panel denied. He correctly states that the writing panel may reconsider a decision of the motions panel while an appeal remains in fieri, citing *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406, 407 (Ind. Ct. App. 2007). However, we are reluctant to overrule the motions panel without a compelling reason as, for example, where we conclude, after due deliberation, that the motions panel has misapplied a rule of substantive law. Here, however, the motions panel merely exercised its discretion when it granted a non-dispositive motion to allow this appeal to proceed, and we decline to disturb that decision.

*Ins. Group v. Poage*, 966 N.E.2d 750, 753 (Ind Ct. App. 2012) ("We prefer to decide a case on the merits whenever possible."), *trans. denied*.

**The Statute of Frauds**

[15] Logan first contends categorically that the trial court erred when it applied the statute of frauds to his claim. The trial court held that Logan's claim for relief is barred by the statute of frauds under Indiana Code section 32-21-1-1(b)(5), which provides that:

> \* \* \* \* \*

> (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

> \* \* \* \* \*

> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

[16] Logan asserts, however, that Indiana Code Title 32, Article 21, only concerns real property, that this case presents "no material issue related to conveyance procedures or to real property," and, therefore, that section 32-21-1-1(b)(5) "simply does not apply to Logan's claim." Appellant's Br. p. 14. Evans counters that Logan has waived this argument because at trial Logan stated only that, "I do not believe that that [statute] applies here," and did not explain

or develop his argument further. Tr. Vol. 2, p. 75; Appellee's Br. p. 9. We cannot agree. Logan's statement was sufficient to inform the trial court that he contested application of the statute of frauds to his claim and to preserve that argument on appeal.

[17] We note that the captions associated with Title 32 ("Conveyance Limitations of Real Property"), and Section 21 ("Conveyance Procedures for Real Property") suggest that these statutory provisions apply only to real estate. However, as Evans notes, the headings that appear throughout the Indiana Code are merely descriptive, not substantive. Appellee's Br. p. 10. Indiana Code section 1-1-1-5(f) (1991) clearly provides, in pertinent part, that:

> The headings of titles, articles, and chapters as they appear in the Indiana Code, as originally enacted or added by amendment, are not part of the law . . . . These descriptive headings are intended for organizational purposes only and are not intended to affect the meaning, application or construction of the statute they precede.

[18] In addition, the descriptive term "statute of frauds" can be misleading in that neither an allegation of fraud nor evidence of fraud is required for the statute to apply. Instead, in pertinent part here, the showing required is merely that the activity that is the subject of the agreement is not to be performed within one year from the making of the agreement. Thus, the term "statute of frauds" describes what it seeks to prevent, not what is required to be alleged or proved. This is so because "[t]he purpose of a statute of frauds is 'to preclude fraudulent claims which would probably arise when one person's word is pitted against

another's so as to open wide those ubiquitous flood-gates of litigation.'" *Akin v. Simons*, 180 N.E.3d 366, 373 (Ind. Ct. App. 2021) (quoting *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980)) (internal quotations omitted). "The closer a statute of frauds is adhered to with controlling judicial authority, the better." *Id.* "Otherwise, the protections afforded by a statute of frauds will be diminished such that the statute is rendered a dead letter." *Id.*

[19] Logan's argument that Indiana Code section 32-21-1-1(b)(5) "simply does not apply" because this dispute does not concern real property is not well-taken. *See* Appellant's Br. p. 14. The statute of frauds is often associated with real estate transactions, *see* I.C. § 32-21-1-1(b)(4), but it also applies to other transactions unrelated to real estate. *See* I.C. § 32-21-1-1(b)(1) (actions against executor or administrator for damages); (b)(2) (action against any person upon any promise to answer for debt, default or miscarriage of another); (b)(3) (action charging person upon any agreement or promise made in consideration of marriage); (b)(5) (action involving agreement not to be performed within one year from making of the agreement); and (b)(6) (action involving agreement, promise, contract, or warranty of cure concerning medical care or treatment not affecting right to sue for malpractice or negligence).

[20] It is well settled and, indeed, beyond dispute that the statute of frauds can apply to transactions that have no connection with real estate. *See*, *e.g.*, *Coca-Cola Co. v. Babyback's Intern., Inc.*, 841 N.E.2d 557 (Ind. 2006) (statute of frauds applied to alleged multi-year national co-marketing agreement), disapproved of on other grounds by *Pennington v. Mem'l Hosp. of South Bend*, 223 N.E.3d 1086 (Ind.

2024); *Rodts v. Hearty City Auto., Inc.*, 933 N.E.2d 548 (Ind. Ct. App. 2010) (statute of frauds applied to alleged five-year employment contract).

[21] In *Rodts*, we explained that Indiana Code section 32-21-1-1(b) requires contracts that are "not to be performed within one (1) year" from the making of the agreement to be in writing. 933 N.E.2d at 553. And "'[p]erformance' under a contract is '[t]he successful completion of a contractual duty.'" *Id.* (quoting Black's Law Dictionary 1158 (7th ed. 1999). In *Rodts* the employment agreement at issue was for a five-year term, and we concluded that, "Because the term of Rodts' employment was not to be performed in one year but, instead five years," the statute of frauds applied to Rodts' breach of contract action. *Id.* Here, likewise, Evans' performance and contractual duty under the alleged warranty could not have been performed within one year but, instead, at the expiration of ten years.

[22] Finally, the statute of frauds requires a written agreement signed by the person against whom the other party seeks to enforce the purported agreement. I.C. § 32-21-1-1(b). Here, there is no writing signed by Evans. We do not hesitate to conclude that the statute of frauds applies in this case.

### Home Improvement Contracts

[23] Logan contends that Evans documented the purchase in an invoice that constituted a home improvement contract. Appellant's Br. p. 14. He attempts to avoid the statute of frauds by citing two statutes, one concerning real property improvement contracts, and the other concerning construction

warranties on real property. *See id.* (citing Ind. Code § 24-5-11-1 (2017), *et. seq.*, and Ind. Code § 32-27-1-12 (2002)). He does not distinguish between these two statutes, and his argument is not well-developed. Indeed, other than a brief mention of the statutes, he does not present cogent reasoning or support his argument by citations to relevant authorities as required by Appellate Rule 46(A)(8)(a). As a rule, we will not "address arguments that are . . too poorly developed or expressed to be understood." *Spainhower*, 176 N.E.3d at 263 (quoting *Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind Ct. App. 2016)).

[24] Nevertheless, the thrust of Logan's argument appears to be that these real property improvement and construction warranties statutes avoid or supersede the statute of frauds. In other words, Logan appears to suggest that these statutes either satisfy or preclude application of the statute of frauds to his warranty claim.

[25] Logan contends that the purchase and installation of the HVAC equipment "constituted a home improvement contract" under Indiana Code section 24-5-11-10 (2017) which, he suggests, is not subject to the statute of frauds. Appellant's Br. p. 14. And further, as we have noted, he asserts that even if the statute of frauds were to apply to his claim, "Evans documented the purchase [of HVAC equipment] in an invoice that constituted a home improvement contract." *Id.* Thus, he reasons that "the code reference [to the statute of frauds] in the involuntary dismissal does not apply to his claim." *Id.*

[26] Logan's agreement with Evans does not satisfy the statutory requirements for a real property improvement contract, as clearly set out in Indiana Code section 24-5-11-10 (Contract requirements). This statute provides that, "A real property improvement supplier shall provide a completed real property improvement contract to the consumer" containing "A reasonably detailed description of the proposed real property improvements," including complete specifications of the work to be performed and other specified information, and signature lines for both the supplier and the consumer. *Id.* But, here, Logan has stated that the complete agreement between Logan and Evans is embodied in a single invoice. Appellant's Br. p. 5. Logan's affidavit states that, "Evans never provided any written warranty terms," Exhibits Vol. 3, p. 4 (Plaintiff's Ex. 1 (Logan's Affidavit)), and Logan also testified that, "I don't have any documentation" of the warranty agreement. Tr. Vol. 2, p. 62. A single invoice, even where, as here, proof of payment is shown by a cashier's check, does not constitute a real property improvement contract under Indiana Code section 24-5-11-10.

[27] Logan also relies on the statutory citation for Construction Warranties on Real Property [Ind. Code § 32-27-1-1, *et seq.*], concerning statutory home improvement warranties. This statute defines a home improvement contract as "a written agreement between the remodeler and an owner to make a home improvement." Ind. Code §32-27-1-5 (2002). The statute also provides for optional statutory home improvement warranties which *may* cover "new heating, cooling, and ventilating systems." Ind. Code § 32-27-1-12 (2002). But, as Logan concedes, the warranty described under the statute "does not cover

appliances, fixtures, or items of equipment that are installed under the home improvement contract." *Id.*

[28] In addition, the statute provides that during the two (2) year period beginning on the warranty date, "a remodeler *may* warrant to the owner" that the home improvement is "free from defects in workmanship or materials" and "from defects caused by faulty installation[.]" *Id.* (emphasis added). Such written warranties would comply with the statute of frauds for two years. But even if Evans had given statutory home improvement warranties for an HVAC installation completed in 2015, they would have expired well before Logan filed suit in 2021. And, at all times the statute of frauds would remain in effect, both during the optional two-year warranty period and after the warranties had expired.

[29] The two home improvement statutes cited by Logan do not correlate with the facts in this case and, thus, we conclude they are inapposite. We fail to see the relevance of either of the home improvement statutes cited by Logan in that even if these statutes applied, they contemplate a written agreement.[4]

---

[4] We note an internal discrepancy between two provisions of the Real Property Improvement statute. Under Indiana Code section 24-5-11-4, the definition of a "real property improvement contract" means an agreement, *oral or written*, between a real property improvement supplier and a consumer . . . ." (emphasis added). Yet in Indiana Code section 24-5-11-10 (a)(10), the requirements of the written contract, which is to be provided to the consumer by the real property improvement supplier, are listed in unmistakable specificity to include, among other details, "(10) Signature lines for the real property improvement supplier or the supplier's agent and for each consumer who is to be a party to the real property improvement contract with a legible printed or a typed version of that person's name placed directly after or below the signature." When interpreting statutes a specific provision controls or takes priority over a general provision. *ESPN, Inc v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1199 (Ind. 2016). Here, the statute specifically and

## Article 2 of the Uniform Commercial Code

[30] Logan next contends that his agreement with Evans constituted a contract for the sale of goods governed by Article 2 of the Indiana Uniform Commercial Code. Logan summarizes the evidence he contends supports the elements of his U.C.C. warranty claim, as follows:

> (1) Evans was a merchant of HVAC equipment, (2) Logan made the warranty a condition of the purchase, (3) *Evans provided an express warranty on the equipment to be installed*, (4) Logan purchased and paid for the equipment, (5) the equipment malfunctioned; (6) Logan notified Evans of the malfunction, (7) Evans failed to perform the warranty service, and (8) Logan suffered damages equal to or greater than the amount sought in his claim.

Appellant's Br. p. 13. (emphasis added.)

[31] Logan contends that Evans is a "Merchant," as defined in Indiana Code section 26-1-2-104 (2007), and that "the sale and associated warranty related to the HVAC equipment would be governed by Indiana's Uniform Commercial Code (UCC)." Appellant's Br. p. 15. He asserts that the HVAC furnace and air conditioning equipment systems Evans sold him fit the U.C.C.'s definition of "goods" and that his "warranty claim must be based upon Evans' sale of the HVAC equipment." Reply Br. p. 7.

---

unambiguously requires that a real property improvement contract be in writing and signed by both the supplier and the customer. I.C. § 24-5-11-10(a)(10).

[32] At trial, Logan testified that his claim is based on a warranty for installation of the equipment, "For the equipment itself." Tr. Vol. II, p. 4. And, again, on appeal he contends that, "Evans provided an express warranty *on the equipment* to be installed." Appellant Br. p. 13 (emphasis added). But Logan confuses and conflates a warranty on the equipment, which on a given set of facts might be covered by the U.C.C., and a warranty for service and repair of the equipment. These are not one and the same.

[33] Logan's claim is for breach of a service and repair warranty. Logan does not invoke the implied warranties of merchantability and fitness for a particular purpose, which are implied in the contract of sale. *See* Ind. Code § 26-1-2-314 (1986) and Ind. Code § 26-1-2-315 (1986). And he does not seek to recover damages for non-conforming goods. *See* Ind. Code § 26-1-2-714 (1986) (damages for breach in regard to accepted goods). Instead, Logan asserts an express warranty claim, and among other statutes, he cites Indiana Code section 26-1-2-313, which provides for express warranties. Appellant's Br. p. 15. And he contends that his "presentation of the invoice and payment for the HVAC equipment was sufficient to evidence the promise, the contract, or agreement on which the warranty was based." *Id.* at 16.

[34] While this statute contemplates both written and oral express warranties by the seller, the statute does not apply to Logan's claim. Under Indiana Code section 26-1-2-313, an express warranty is created from the seller's affirmation of a fact or promise made to the buyer "which relates to the goods" *and* which represents "that the goods shall conform to the affirmation or promise." In other words,

an express warranty under this statute arises from a "self-imposed undertaking" by the seller that the goods shall conform to an affirmation or promise upon which the buyer is entitled to rely. *See Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1192 (Ind. Ct. App. 2020) ("an express warranty is a promise that goods will conform to a particular description or affirmation"). The express warranty provisions of Indiana Code section 26-1-2-313 do not apply to a service and repair warranty which, while related to the sale of goods, is not a warranty that, when delivered, the goods will conform to a particular affirmation or promise.

[35] Thus, Logan asserts neither a statutory implied warranty nor a statutory express warranty upon a sale-of-goods claim under the U.C.C. He claims a breach of warranty to service and repair the HVAC equipment. His claim is not a U.C.C. warranty claim but a common law action for what he calls a "refund." Tr. Vol. 2, p. 59. In other words, while Logan seeks "damages," he actually seeks a rescission, namely, to sever the warranty claims from the sale-of-goods transaction and to recover $10,000 of the total contract price, the amount which he attributes to purchase of the warranty.

[36] Thus, we conclude that Logan's warranty claim is not covered by the U.C.C. because a service and repair warranty is not a warranty that the goods conform

to an affirmation or promise, i.e., not a warranty of the value or fitness of the goods, but a warranty ancillary to the sale of goods.[5]

[37] Logan notes that, "Evans claims the warranties expired four years after delivery" and asserts that, "this is simply untrue." Reply Br. p. 7. Instead, Logan contends that, "In this case, performance of the warranty service was only required when/if the equipment malfunctions." *Id.* Logan misunderstands the U.C.C. limitations of actions provisions. Under the U.C.C., the warranty would run from the date of installation, not from the date when service or repair was required. *See* Ind. Code § 26-1-2-725 ("breach of warranty occurs when tender of delivery is made . . . .").

[38] Even if Logan's alleged warranty were governed by the U.C.C., Indiana Code section 26-1-2-725 contains a four-year statute of repose for breach of warranty actions. *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 696 (Ind. Ct. App. 1987). Under the U.C.C., an action for breach of warranty must be commenced within four years after tender of delivery. *Ferdinand Furniture Co., Inc. v. R.M. Anderson*, 399 N.E.2d 799, 802 (Ind. Ct. App. 1980). Indiana Code section 26-1-2-725 is

---

[5] Evans asserts that the U.C.C. Article 2 provisions governing the sale of goods do not apply because the "primary thrust" of the alleged agreement was a services contract. Appellee's Br. pp. 7, 11. We cannot agree. The primary thrust of the agreement was the installation of HVAC equipment. The alleged service and repair warranty was secondary and ancillary to the equipment. But, here, on these facts, whether the equipment provisions or the alleged service and repair provisions of a hybrid or "mixed transaction" predominate is not dispositive.

not an occurrence-based statute of limitations but a four-year statute of repose which, on these facts, would preclude Logan's warranty claim.[6]

[39] Thus, under Indiana Code 26-1-2-725(2), the statute begins to run when tender of delivery is made, and an action for breach of implied warranty must be commenced within four years after tender of delivery. *Ferdinand Furniture Co.,* 399 N.E.2d at 802. Logan's warranty claim is not covered by the U.C.C. Even if it were covered it would be barred by the four-year statute of repose which ran from the date of installation—March of 2016.

### Sufficient Evidence to Prove the Warranty Claim

[40] Finally, again, Logan asserts that his "presentation of the invoice and payment for the HVAC equipment was sufficient evidence [of] the promise, contract, or agreement on which the warranty was based." Appellant's Br. p. 16. He contends that when all the evidence is considered, there is sufficient evidence of an oral warranty and that, "Evans breached an agreement to personally provide warranty service to Logan for the HVAC systems installed into Logan's residence." *Id.* at 17. The record shows Evans conceded there was a warranty. Thus, Logan contends "there has been no dispute that Evans provided Logan an express[] warranty for a period of 10 years on the HVAC equipment." *Id.*

---

[6] Logan appears to suggest that the exception which can extend the statute of limitations to the "time of performance" applies. *See* Reply Br. p. 7. But Logan's reliance on that exception is misplaced because the exception applies only "where a warranty explicitly extends to *future* performance." *See* Ind. Code § 26-1-2-725(2) (emphasis added). Here, there was no warranty expressly extending the time of performance.

Logan contends that this evidence is sufficient to support an enforceable claim. *Id.*

[41] At trial Logan introduced an audio recording of his conversation with Evans on December 30, 2015. In that recording, Evans conceded that there was a 10-year manufacturer's warranty, but he did not concede, as Logan alleges, that $10,000 of the contract price was to purchase a service and repair warranty. There is no evidence other than the bare assertion in Logan's affidavit and his trial testimony that $10,000 of the first payment was attributable to a 10-year warranty, and no evidence of the other terms and conditions of the alleged warranty. Logan concedes that Evans "never provided any written warranty terms," Exhibit Vol. 3, p. 4 (Plaintiff's Ex. 1; Logan's affidavit), and that, "I don't have any documentation." Tr. p. 62. It is well settled that our courts can only enforce the terms of a contract agreed upon and cannot supply missing, essential terms. *Johnson v. Sprague*, 614 N.E.2d 585, 589 (Ind. Ct. App. 1993). And where, as here, an agreement is required to be in writing, the agreement must completely contain the essential terms without resort to parol evidence in order to be enforceable. *Coca-Cola Co.*, 841 N.E.2d at 565.

[42] Further, the burden of proof with respect to damages is with the plaintiff. *LTL Truck Service, LLC v. Safeguard, Inc.*, 817 N.E.2d 664, 668 (Ind. Ct. App. 2004). A fact finder may not award damages on the mere basis of conjecture or speculation. *Id.* Again, even if in theory an oral contract were enforceable here, essential terms would be missing.

[43] In the audio recording, Evans stated, "It's got a 10-year warranty. It's a Bryant furnace" and that, "You've got a 10-year warranty and it's a Bryant Carrier." Tr. Vol. 2, p. 21, 23. Evans concedes he told Logan there was a manufacturer's 10-year warranty, *id.* at 12, which is what the audio recording indicates. However, Logan testified that, "My agreement was only with [Evans]. I paid him." *Id.* at 56. Logan asserts that it was his understanding "Mr. Evans was going to take care of everything." *Id.* at 12. Thus, Logan's claim is a personal claim against Evans, not against a manufacturer, that he paid Evans for a warranty and that Evans was obligated either to register the manufacturer's warranty or to perform the warranty service himself. Reply Br. p. 8. If anything, the recording confirms that there was no meeting of the minds, and a meeting of the minds between the contracting parties is essential to the formation of a contract. *Lash v. Kreigh*, 202 N.E.3d 1098, 1104 (Ind. Ct. App. 2023).

[44] Logan further contends that Evans "appear[s] to have delegated his duties under the warranty to the manufacturer," Appellant's Br. p. 17, and notes that under the Uniform Commercial Code, "No delegation of performance relieves the party delegating of any duty to perform or any liability for breach." *Id.* at 16 (quoting Indiana Code § 26-1-2-210). In other words, Logan contends that Evans cannot shift his liability for performance of the warranty to the manufacturer. Logan's argument might well prevail if there were written documentation of a warranty between Logan and Evans. But, as the trial court found, Logan has not provided an agreement reduced to writing that Evans

agreed to personally provide warranty and repair maintenance on the HVAC system beyond one (1) year from the making of the agreement, which was December 29, 2015, the date of the invoice, at the earliest, or March 31, 2016, when installation of the HVAC system had been completed, at the latest.

[45] Evans contends and the audio recording confirms that he agreed to provide a manufacturer's warranty. And Logan argues that Evans was required either to register the manufacturer's warranty or perform the warranty service himself but that he did neither. While Logan has established that he purchased a warranty of some kind, he has not documented the terms and conditions of the alleged warranty. This case illustrates the perils of oral contracts not to be performed within one (1) year from the making of the agreement, precisely the kind of disputed agreements the statute of frauds seeks to prevent.[7] To survive the statute of frauds, not only must there be a writing but the writing must be signed by the party against whom the contract is to be enforced, and, here, Evans' signature is nowhere to be found.

## Conclusion

[46] We conclude that the statute of frauds applies and precludes Logan's warranty claim in that the alleged ten-year agreement is not to be performed within one (1) year from the making of the agreement. We also conclude that neither the

---

[7] Like the trial court, we do not question that Logan holds a bona fide belief that he paid Evans $10,000 for a service and repair warranty. However, because any such alleged agreement was not documented in writing, as a matter of law he has shown no right to relief. *See* Ind. Trial Rule 41(B).

home improvement statutes cited by Logan nor Article 2 of the Uniform Commercial Code avoid or nullify the operation and effect of the statute of frauds. And we conclude that the alleged oral agreement is barred by the statute of frauds. Even if the agreement were unambiguous and otherwise valid in all other respects, it would be unenforceable because it was not documented in writing as required by law.

[47] Affirmed.

Mathias, J., and Foley, J., concur.

APPELLANT PRO SE

Barry F. Logan, Jr.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Tasha R. Roberts
Roberts Litigation Group
Indianapolis, Indiana